**Brian LARSON, Plaintiff–Appellee,**

v.

**Ronald NEIMI, Defendant–Appellant.**

No. 92–15873.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided Nov. 19, 1993.

James H. Wernicke, Deputy Atty. Gen., Sacramento, CA, for defendant-appellant.

Mark E. Merin and Frank R. Lawrence, Dickstein & Merin, Sacramento, CA, for plaintiff-appellee.

Before: TANG, TROTT, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Ronald Neimi, a sergeant with the California Highway Patrol, appeals from the order denying a new trial and from the judgment against him after a jury found him liable for the false arrest of Brian Larson. Neimi contends that the district court should have instructed the jury on the standard for general Fourteenth Amendment substantive due process claims rather than on the more specific standard for Fourth Amendment claims. He also contends that the court should not have resubmitted an apparently inconsistent verdict to the jury. We affirm.

## BACKGROUND

On March 10, 1990, two tour buses collided in a snow storm on Highway 80 outside of Truckee, California. The driver of one of the buses was injured. Neimi responded to the scene in order to manage the situation and supply aid to the injured driver. While he was doing so, a passenger became vocal and engaged in a shoving match with Neimi. Then another passenger joined the vocal one. Neimi decided that as soon as he had a free moment he would arrest both of them for obstructing an officer. When that moment came, he arrested the other person. He also arrested Larson. Unfortunately, Larson was the wrong man. He told Neimi that, and others testified that Larson was not even in the vicinity of the altercation.

Larson then brought this action under 42 U.S.C. § 1983 on the ground that he was arrested in violation of the United States Constitution. He asserted, of course, that his Fourth Amendment right to be free from an unlawful seizure had been violated. For his part, Neimi claimed qualified immunity and also insisted that his conduct was to be tested by the general Fourteenth Amendment standard which applies to substantive due process claims.

The jury ultimately disagreed with Neimi and awarded damages to Larson. However, along the way the jury filled out a special verdict form in which it first declared that Neimi had qualified immunity but then awarded damages against him. With the approval of the parties, the district judge resubmitted the verdict to the jury for clarification. The jury clarified the verdict all right; it changed the form to say that Neimi did not have qualified immunity. Judgment followed and Neimi appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"Whether a jury instruction misstates the elements that must be proved at trial is a question of law that is reviewed de novo." *Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir.1992). The district court's decision to resubmit a verdict to the jury for clarification is reviewed for abuse of discretion. *See Mateyko v. Felix,* 924 F.2d 824, 827 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991).

A district court's decision on a motion for a new trial is also reviewed for an abuse of discretion. *United States v. 99.66 Acres of Land,* 970 F.2d 651, 658 (9th Cir.1992).

## DISCUSSION

A.  *The Fourth Amendment Instruction.*

Neimi points out that the Fourth Amendment and other provisions of the Bill of

Rights are applied to the states through the due process clause of the Fourteenth Amendment. So much is true, and has been for decades. Indeed, that concept has been on the legal landscape for so long that it is seldom even noticed. Neimi's next step is far more problematic. He argues that because the Bill of Rights' provisions do flow through the Fourteenth Amendment, the principles developed for deciding general claims of violation of due process must apply to the decision of claims regarding specific violations of the provisions of the Bill of Rights. Thus, he says, instruction of the jury on the Fourth Amendment standard was error. We disagree because, as we will show, the law is squarely against that contention. But before we do so, we must digress to discuss Larson's claim that Neimi did not preserve his instruction objection.

■ Larson's waiver argument turns on a colloquy that took place after the district court instructed the jury. The court asked if there were "any objections to the instructions as read," and Neimi's counsel said, "No." The requirement of Federal Rule of Civil Procedure 51 that specific objections to instructions must be made before the jury retires is strictly enforced in the Ninth Circuit. *Hammer v. Gross,* 932 F.2d 842, 847–48 (9th Cir.) (en banc), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991). "[T]he sole permissible deviation from the strictures of Rule 51 is that, where the trial court is aware of the party's concerns with an instruction and further objection would be unavailing, we will not require a formal objection." *Id.* at 847.

■ Neimi falls within the exception. The instruction was first discussed before trial, and the district court said it would give no such instruction. Nevertheless, Neimi filed a proposed instruction in that form and at the end of the jury charge conference he objected to the omission of that instruction. The district judge then stated his reasons for refusing to give the instruction. It is pellucid that the district court was well aware of Neimi's position and that further objection would have been unavailing. The fact that counsel courteously refrained from carrying on about the form of the instructions the district court gave did not, and does not, change the posture of the case. Neimi preserved his claim of error. *See id.; Brown v. Avemco Inv. Corp.,* 603 F.2d 1367, 1370–73 (9th Cir.1979) (court was aware of objection through examination of witnesses, proposed instructions and a directed verdict motion); *Martinelli v. City of Beaumont,* 820 F.2d 1491, 1493–94 (9th Cir.1987) (court was fully aware of the objection where proposed alternate instructions and discussion made that clear); *compare, United States v. Parsons Corp.,* 1 F.3d 944, 945 (9th Cir.1993) (a mere suggestion cannot take the place of an objection). We return to the main theme.

■ Neimi argues that the district court should have applied the principles developed by the Supreme Court in *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In those cases the plaintiffs alleged that their due process rights had been violated by the actions of prison authorities. In Davidson's case an official had negligently failed to supply adequate protection after being informed of threats by another inmate. 474 U.S. at 345–46, 106 S.Ct. at 669. In Daniels' case an official had negligently left a pillow on the prison stairway. Daniels stumbled on it and was injured. 474 U.S. at 328, 106 S.Ct. at 663. The Supreme Court opined that these due process claims were little more than tort actions dressed up in constitutional garb. It expressed a lack of interest in making the Constitution a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 332, 106 S.Ct. at 665 (quotation and citation omitted). It characterized the rule to be applied to the two cases before it in the following manner:

> In *Daniels,* we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.

*Davidson,* 474 U.S. at 347, 106 S.Ct. at 670.

It is that language which Neimi seizes upon and which drives his argument that a

negligence standard must be applied to this case. What Neimi overlooks is the fact that the Supreme Court was dealing with merely negligent acts which were said to violate due process simply because they were performed by governmental officials. It was not dealing with situations where an official took a direct action against the citizen which violated a specific constitutional command. Nor was it dealing with an area where it had said that the specific constitutional provisions involved were "to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." *Malloy v. Hogan,* 378 U.S. 1, 10, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964).

The case more directly in point is *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In that case, the plaintiff sought to recover damages "for injuries allegedly sustained when law enforcement officers used physical force against him during the course of an investigatory stop." *Id.* at 388, 109 S.Ct. at 1868. The Court first rejected the notion that all excessive force claims should be addressed with a general Fourteenth Amendment due process standard. *Id.* at 393–94, 109 S.Ct. at 1870.

It went on to say that the first task is to identify the precise nature of the alleged constitutional violation. *Id.* Then:

> In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

*Id.* at 394, 109 S.Ct. at 1870–71. The Court continued by holding:

> *[A]ll* claims that law enforcement officers have used excessive force—deadly or not— in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395, 109 S.Ct. at 1871.

Neimi attempts to deflect this blow to his argument by noting that *Graham* involved an excessive force claim, whereas this case involves an illegal seizure claim. That *is* a distinction. That is all it is because the Fourth Amendment also "provides an explicit textual source of constitutional protection against *this* sort of physically intrusive governmental conduct...." *Id.* (emphasis added.) Its "prohibition against unreasonable seizures of the person" is, in fact, one of "the ... primary sources of constitutional protection against ... abusive governmental conduct." *Id.* at 394, 109 S.Ct. at 1871. It prohibits the unreasonable seizures of citizens, and Neimi had to comply with its standards or suffer the consequences.

Our prior decisions are in complete accord with this exegesis on the enforcement of Fourth Amendment rights. In *Caballero v. City of Concord,* 956 F.2d at 206, for example, we declared that Fourth Amendment, rather than general due process, standards applied to claims of unconstitutional seizures of the person. In *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir.1988), we reached the same conclusion, although not quite as directly. A number of our other decisions are to the same effect, although they do not discuss the distinction between the specific and general standards. *See, e.g., Morgan v. Woessner,* 997 F.2d 1244, 1252–54, 1256–60 (9th Cir.1993); *Maag v. Wessler,* 960 F.2d 773, 775–76 (9th Cir.1992).

Neimi argues that our prior decisions did not explicitly indicate our understanding that the Fourth Amendment was being applied to governmental officials through the Fourteenth Amendment. We now state explicitly what was implicit in our previous holdings. We do understand the route by which the

Fourth Amendment has come to be applied to the states. *See Ker v. California,* 374 U.S. 23, 30–31, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963); *Mapp v. Ohio,* 367 U.S. 643, 650–55, 81 S.Ct. 1684, 1689–91, 6 L.Ed.2d 1081 (1961). Understanding that, we continue to hold that Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him.

### B. *Verdict Resubmission.*

Neimi desired a special verdict, so he submitted a special verdict form, which the district court accepted. Unfortunately, the special verdict form contained an ambiguity. It first asked if Neimi had violated Larson's rights; it next asked if Neimi was entitled to qualified immunity; it then went on to ask the jury to determine damages. The jury, at first, answered the first two questions in the affirmative. It then fixed damages at $26,612. When that form was returned by the jury, everyone—the court and both parties—recognized that there was an inconsistency in the verdict because if there were immunity, the jury did not need to (and could not) go forward and assess damages. The difficulty arose because the jury was not told that. The form had the usual "stop here, if your answer is no" direction after the first question. It did not have a similar direction after the second one. Obviously, the jury's answers could have meant that it erred in checking the "yes" box for the second question, or they could have meant that the jury thought it was to calculate the damages even if there were immunity. Fortunately the jury had not been discharged, so the trial judge was able to resubmit the form to it and thus attempt to provide "both fairness and efficiency." *Mateyko,* 924 F.2d at 827.

Before the form was resubmitted to the jury, the district judge held a conference with the parties. Both agreed that the form should be resubmitted and neither offered any objection to the way in which it was done.

The jury retired to review its verdict. When it returned, it had changed the answer to the second question to "no." That rendered the verdict consistent, though not to Neimi's liking.

Given the fact that Neimi submitted the defective form in the first place and given the fact that he agreed to resubmission, the error, if any, at least borders on an error invited by Neimi himself. *See United States v. Baldwin,* 987 F.2d 1432, 1436–37 (9th Cir.) (where defendant himself proposed the challenged jury instruction, that was invited error and review was denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991) (same). Certainly, we would be hard-pressed to determine that the district court abused its discretion when it denied a motion for a new trial based upon this ground.

■ In any event, Neimi's tardy complaints about the resubmission of the verdict form are ill-founded. He makes much of a Fourth Circuit case, where the court disapproved of the resubmission of a form in which a jury first indicated no liability and then awarded damages. *McCollum v. Stahl,* 579 F.2d 869, 870–71 (4th Cir.1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979). The court also held that, as a matter of law, special verdict forms cannot be resubmitted. *Id.* However, in *Mateyko,* we rejected the Fourth Circuit's analysis and went on to hold that:

> If the inconsistency between special verdict answers is noticed prior to the dismissal of the jury, the district court has the discretion to resubmit the issue to the jury with a request for clarification. Though [Federal Rule of Civil Procedure] 49(a) does not explicitly provide for resubmitting inconsistent special verdict answers, neither does the rule prohibit it. Permitting the trial court in its discretion to resubmit inconsistent answers for clarification promotes both fairness and efficiency.

924 F.2d at 827. What we said then applies with equal force now. Where the district judge does not push the jury in one direction or another, resubmission is a most sensible solution.

■ But, says Neimi, the district judge abused his discretion because he should have first tried to reconcile the answers. We find

that argument unpersuasive. First, when the district judge suggested resubmission, counsel for Neimi said, "I don't know that there is an alternative." Second, while, as Neimi argues, we *have* said that the trial judge should try to reconcile the special verdict, that was in the context of a case where the jury had already been discharged. *Floyd v. Laws,* 929 F.2d 1390, 1396–97 (9th Cir.1991). Thus, resubmission was not possible. Of course, it makes a good deal of sense to require trial and appellate courts to do all they can to reconcile special verdict answers when the only alternative is ordering a new trial. However, when the very body that issued the ambiguous or inconsistent verdict is still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness. That is not to say that a court could *never* abuse its discretion when it resubmitted a case to the jury with an appropriate explanation of the reason. That case might possibly exist, but it is not the case before us.

### C. *Attorneys Fees and Sanctions on Appeal.*

 Larson requests attorneys fees under 42 U.S.C. § 1988. He is entitled to them. *See Borunda,* 885 F.2d at 1391–92. He also asks for sanctions under Federal Rule of Appellate Procedure 38, but the appeal was not frivolous, so sanctions are inappropriate. *Id.*

### CONCLUSION

Much legal discussion, and many opinions, proceed against a background of assumptions. It is fortunate that is so because it helps prevent legal discussions from becoming even more turgid and paraphrastic than they already are. Law might be a seamless web, but only the sturdiest among us could tolerate having the whole web described each time a case was decided.

Yet there are times when someone will ask that a usually unacknowledged part of the background be brought to the forefront and perused before it recedes again into relative obscurity. So it is here. For decades we have known that the Fourth Amendment is applied to the states through the Due Process Clause of the Fourteenth Amendment. We have issued numerous opinions which have assumed, but never stated, that. We now state it and hold that those cases are not affected. The law of this circuit continues to be that in actions for the unconstitutional seizure of persons by officials, liability will be determined under the specific standards of the Fourth Amendment rather than under the general due process standards of the Fourteenth Amendment.

The case is remanded for a determination of the appellate fee award. *See Ash v. Lake Oswego Sch. Dist.,* 980 F.2d 585, 590 (9th Cir.1992).

**AFFIRMED AND REMANDED.**