66 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dallas ABRAMS, Plaintiff-Appellee,
v.
PACIFIC COAST DEFENSE CREDIT UNION; North Island Federal
Credit Union; Joseph Stratton, Defendants-Appellants.
 No. 93-56343.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 7, 1995.
Decided Sept. 1, 1995.
 
 Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Pacific Coast Defense Credit Union ("Pacific"), North Island Federal Credit Union ("North Island"), and Joseph Stratton appeal from jury verdicts in favor of appellee-plaintiff Dallas Abrams. Abrams sued Pacific for various claims related to his removal as a Director and President/CEO of Pacific in May 1990. The jury awarded Abrams $250,000 for emotional distress resulting from his removal from Pacific's Board of Directors, and $50,000 in damages for defamatory remarks made by Stratton. The jury also found that Abrams was entitled to $231,000 under the merger clause of his employment contract.
 
 
 3
 On appeal, Pacific contends that (1) California's Workers' Compensation law provides the exclusive remedy for any emotional distress damages Abrams suffered as a result of his removal from the Board of Directors, (2) emotional distress damages are not available under California law governing employment contracts or financial torts, (3) Stratton's comments were not actionable defamation either because they were privileged or because they were statements of opinion not provably false and, (4) the jury did not determine whether Pacific was liable under the merger clause of Abrams' contract. We have jurisdiction, 28 U.S.C. Sec. 1291, and we reverse in part, vacate in part, and remand.
 
 I.
 
 4
 Because the parties are familiar with the facts of this case, we need not recite them here. We review de novo Pacific's appeal from the district court's denial of its Rule 50 motion for judgment as a matter of law. Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir.1993), cert. denied, 114 S.Ct. 2163 (1994). Accordingly, we must decide whether "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's." Id. A jury's verdict is sustained if it is supported by substantial evidence--that is, "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir.1994). The district court's denial of a motion for new trial, pursuant to Fed.R.Civ.P. 59, is reviewed for an abuse of discretion. Larson v. Neimi, 9 F.3d 1397, 1398 (9th Cir.1993).
 
 II. Damages for Violation of Bylaws
 A. Workers' Compensation Exclusive Remedy
 
 5
 Pacific argues that the district court erred in ruling that Abrams' claim for wrongful termination from the Board of Directors was not barred by the exclusivity provisions of California's workers' compensation laws. Cal.Lab.Code Secs. 3600-3602. The California Supreme Court has held that emotional distress claims that "arise out of" termination of employment are generally within the exclusive remedy provision of workers' compensation. See Livitsanos v. Superior Court, 828 P.2d 1195, 1202 (Cal.1992); Shoemaker v. Myers, 801 P.2d 1054, 1063, 1069 (Cal.1990); Cole v. Fair Oaks Fire Protection District, 729 P.2d 743, 750 (Cal.1987). Accordingly, the district court ruled that Abrams could not bring a claim for infliction of emotional distress based upon his termination as CEO of Pacific. However, Abrams was permitted to proceed on a tort theory of emotional distress arising outside of the compensated employment situation, based upon violations of Pacific's bylaws in removing him from the Board of Directors. Thus, the crux of the dispute between the parties is whether the action challenged by Abrams--the Supervisory Committee's removal of Abrams from the board of directors without a hearing before, and approval by, the members of the credit union--is a compensable injury that "aris[es] out of and in the course of the employment." Cal.Lab.Code Sec. 3600.
 
 
 6
 In denying Pacific's post-verdict motion for judgment as a matter of law, the district court found that the terms and scope of Abrams' employment contract were disputed questions of fact that the jury had resolved in plaintiff's favor. "[T]he determination that a particular activity is sufficiently work-related to satisfy the conditions of coverage is a factual inquiry." Bell v. Macy's California, 261 Cal.Rptr. 447, 451-52 (Ct.App.1989)); see also Eckis v. Sea World Corp., 134 Cal.Rptr. 183, 187 (Ct.App.1976) ("[W]hether employee's injury arose out of and in course of employment is generally a question of fact to be decided in light of circumstances of the particular case.") However, we agree with Pacific that the jury was not asked to resolve this factual question because the district court refused to give an instruction on this issue. ER25: 15; ER24: 4075.
 
 
 7
 During the liability phase of the trial, the district court asked the jury to determine whether Abrams was entitled to removal procedures as either a Director or an Officer. ER23: 3 (special verdict (liability) # 9) This special verdict was erroneous because the jury could reasonably believe that liability could be premised upon Abrams' removal as CEO. In the damages phase, the district court attempted to correct this error by instructing the jury that emotional distress damages were not available for Abrams' termination as CEO or for breach of contract. In addition, the special verdict form specifically limited recovery to non-economic damages that resulted from Pacific's failure to comply with its by laws in removing Abrams from the board and/or as treasurer. None of these instructions, however, required the jury to determine whether Abrams' service on the board of directors and as treasurer were "reasonably incident[al]" to his employment as CEO. Horn v. Bradco Int'l, Ltd., 283 Cal.Rptr. 721, 726 (Ct.App.1991) (noting that the jury was specifically instructed to find whether the employer's conduct was independent of termination of employment).
 
 
 8
 Moreover, the special verdict on damages instructed the jury to determine the amount Abrams should recover for injuries arising from his removal "from the Board of Directors and/or as an officer (treasurer)." However, Abrams was not elected by the credit union's members to the treasurer position; he was assigned the duties of the treasurer by the Board, as part of his employment as CEO. Pacific's bylaws specifically state that the Treasurer "shall be the general manager (CEO) of the credit union." While not entitled to compensation for his role as a member of the board of directors, Abrams was entitled to compensation for his position as treasurer. ER5: 10 (Art. VII, Sec. 7) Thus, Abrams' position as treasurer arguably was "reasonably encompassed within the compensation bargain," Shoemaker, 801 P.2d at 1063, or "reasonably incident to the course of the employment relationship," Horn, 283 Cal.Rptr. at 722 n. 6, a result which would subject whatever injuries he sustained because of his removal from that position to the workers' compensation exclusive remedy provisions. See Cal.Lab.Code Sec. 3600(a)(2) (extending worker's compensation coverage for injuries sustained by an employee while "performing service growing out of and incidental to his or her employment"); Maher v. Workers' Comp. Appeals Bd., 661 P.2d 1058, 1060 (Cal.1983) (interpreting "in the course of employment" to include "those reasonable things which his contract with his employer expressly or impliedly permits him to do" and holding that the causal connection between the employment and the injury "need not be the sole cause; it is sufficient if it is a contributory cause").
 
 
 9
 There are sufficient facts to allow a reasonable factfinder to conclude that Abrams' positions on the Board of Directors and as Treasurer were reasonably incidental to his employment as CEO. Of course, presented with the fact that Pacific's prior CEO remained on the Board after her retirement, that Abrams' contract with Pacific did not require him to serve on the Board as a condition of employment, and that Abrams could only serve on the Board after his election by the credit union's membership as a whole, a reasonable factfinder could have justifiably concluded that Abrams' service on the Board was not reasonably incidental to his employment. Thus, this question should have been decided by the jury, not the district court. See ER24: 4075. Accordingly, we vacate special verdict (liability) # 9 and special verdict (damages) # 13 awarding Abrams $250,000.00 in non-economic damages as a result of Pacific's failure to follow the procedures set forth in the by-laws in terminating him from the board of directors and/or the treasurer position. Upon remand, the jury must determine whether Abrams' positions as a member of the board of directors and as treasurer was "service incidental to the employment and which would ... be viewed as a risk of employment." Fermino v. Fedco, 872 P.2d 559, 565 (Cal.1994).
 
 B. Emotional Distress
 
 10
 Even if Abrams' claim for emotional distress damages is not barred by the workers' compensation exclusive remedy provisions, Pacific argues that Abrams cannot recover such damages as a matter of law. If Pacific were correct, we would reverse the jury award of emotional distress damages and would not need to remand for consideration of whether Abrams' termination from the board of directors and the treasurer position were encompassed within workers' compensation. Thus, we must decide this issue. We conclude that Abrams' tort claim for emotional distress damages is not barred as a matter of law, but the jury did not determine whether he had established all of the elements of the tort of negligent infliction of emotional distress. Upon remand, if the jury determines that Abrams' tort claim is not barred by the workers' compensation exclusive remedy provisions because they arose out of his employment, the district court shall instruct the jury to determine whether Abrams has established each of the elements of a claim for emotional distress damages arising from a purely economic tort.
 
 
 11
 According to Abrams, because the jury's special verdicts establish that defendants had a clear duty to follow the bylaws, that they violated that duty, and that he suffered non-economic damages as a result of the breach, he is entitled to recover both economic and non-economic losses arising therefrom. Although the jury found that Abrams "was entitled to have the procedures set forth in the bylaws followed to terminate him," the question whether a duty of care exists is a question of law, not one of fact for the jury. Huggins v. Longs Drug Stores Cal., Inc., 862 P.2d 148, 151 (Cal.1993) (citing Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 770 P.2d 278 (Cal.1989)); Nava v. McMillan, 176 Cal.Rptr. 473, 475 (Ct.App.1981) (citing Goodman v. Kennedy, 556 P.2d 737 (Cal.1976)). Accordingly, we must review this question de novo. Vollendorf v. United States, 951 F.2d 215, 217 (9th Cir.1991).
 
 
 12
 On appeal, Abrams argues that his removal violated both Pacific's bylaws and relevant state statutes. See Cal.Fin.Code Secs. 14000 et seq. Abrams argues that violation of these statutes constitutes a breach of an established legal duty ("negligence per se"), and that the jury found that this negligence proximately caused Abrams' non-economic damages. Pacific's bylaws, which explicitly incorporate California's Credit Union Law, appear to be aimed primarily at the protection of the interests of credit union members, not the interests of the individual board members. However, the specific statutory provision and bylaw that Pacific is alleged to have violated, providing to a suspended director the opportunity to be heard at a special meeting of the credit union's membership before his or her removal becomes permanent, are clearly intended to protect the interests of the individual directors.[1] Accordingly, we find that Abrams is within the class of persons for whose protection the statute and bylaws were adopted.
 
 
 13
 We reject Pacific's argument that violation of "economic legislation" such as California's Credit Union Law cannot serve as the basis for negligence per se. See Little v. Community Bank, 286 Cal.Rptr. 4, 6 (Ct.App.1991) (holding that the violation of a statute governing home sales established a rebuttable presumption of breach of a duty of care), rev. denied, (Dec. 12, 1991). Thus, Pacific's violation of the applicable bylaws and statutory provisions in removing Abrams from the board of directors would establish a rebuttable presumption of negligence under California Evidence Code section 669. Id; Sierra-Bay Fed. Land Bank Ass'n v. Superior Court, 277 Cal.Rptr. 753, 763 (Ct.App.1991), rev. denied, (May 2, 1991).
 
 
 14
 Generally, a court's formulation of a jury instruction is reviewed for an abuse of discretion, and the instructions are reviewed as a whole to determine if they fairly and adequately cover the issues presented, correctly state the law, and are not misleading. Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 606 (9th Cir.1993); Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). However, whether a jury instruction misstates the elements that must be proved at trial is a question of law reviewed de novo. Caballero v. Concord, 956 F.2d 204, 206 (9th Cir.1992). An error in instructing a jury in a civil case requires reversal unless the it is more probable than not that the error is harmless. Id.
 
 
 15
 The jury instructions did not require the jury to find that defendants had committed intentional or outrageous tortious acts, even though that finding is a prerequisite for recovery of emotional distress damages resulting from purely economic loss under California law. See Smith v. Superior Court, 13 Cal.Rptr.2d 133, 137 (Ct.App.1992) ("[M]ere negligence will not support a recovery for mental suffering where the defendant's tortious conduct has resulted in only economic injury to the plaintiff."); Branch v. Homefed Bank, 8 Cal.Rptr.2d 182, 186 (Ct.App.1992) ("Recovery for worry, distress and unhappiness as the result of damage to property, loss of a job or loss of money is not permitted when the defendant's conduct is merely negligent.").
 
 
 16
 By failing to require a finding of intentional or outrageous tortious conduct, the court's instructions and special verdict misstated the elements that must be proved at trial, and this error was not more probably than not harmless. Caballero, 956 F.2d at 206. Accordingly, on remand, Pacific is entitled to have the jury determine whether Abrams has established each of the elements of a claim for emotional distress damages arising from a purely economic tort.
 
 III. Defamation Claim
 
 17
 Pacific contends that because Stratton's statements that Abrams had "misled" the Board and had "mismanaged" Pacific were made to Essey in the course of a meeting regarding the possible merger of USA Credit Union and Pacific, the statements were privileged under Cal.Civ.Code Sec. 47(C). Furthermore, Pacific contends, because the jury found that the statements were not made with malice, Stratton cannot be liable for defamation based upon these statements.
 
 
 18
 "Ordinarily, the existence of a privilege is a legal question for the court." Institute of Athletic Motivation v. University of Illinois, 170 Cal.Rptr. 411, 419 n. 5 (Ct.App.1980); Maynard v. City of San Jose, 37 F.3d 1397, 1406 (9th Cir.1994). Furthermore, "[w]here the facts and circumstances under which a defamatory publication is made are not disputed, the question of privilege is one of law." Kramer v. Ferguson, 41 Cal.Rptr. 61, 64 (Ct.App.1964); Gantry Constr. Co. v. American Pipe & Constr. Co., 122 Cal.Rptr. 834, 840 (Ct.App.1975).
 
 
 19
 Here, there is no dispute regarding the facts or circumstances under which Stratton's statements were made. Although Essey did not request the information that Stratton offered regarding Abrams, the question whether the listener is an "interested person" under Sec. 47(C) is an objective one, focusing upon the reasonable expectation of the speaker. See Restatement (Second) of Torts Sec. 596 (1977) (suggesting a privilege exists "if the circumstances lead anyone of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.") (quoted in Institute of Athletic Motivation, 170 Cal.Rptr. at 417).
 
 
 20
 In denying Pacific's Rule 50 motion on this issue, the district court found that it was not objectively reasonable for Stratton to believe Essey would be interested in hearing about "the specific management skills of an ex-employee" in the context of merger negotiations. We disagree. We find that under these circumstances, it was objectively reasonable for Stratton to believe that Essey would be interested in Abrams' past management of Pacific. See Williams v. Taylor, 181 Cal.Rptr. 423, 427 (Ct.App.1982) (statements made by plaintiff's former employer to current customer were qualifiedly privileged under Sec. 47(C) because they concerned the reasons for plaintiff's termination, and "as such, they were of a kind reasonably calculated to protect or further a common interest of both the communicator and the recipient") (quoting Deaile v. General Telephone Co., 115 Cal.Rptr. 582 (Ct.App.1974)). Essey's position as a potential merger partner with Pacific created a "common interest" in understanding the reasons for Pacific's precarious financial condition. In fact, Essey testified that he would be interested in knowing what factors had caused Pacific to "go under." Tr. at 3558. Essey's "potential interest in the subject matter"--the reasons for Pacific's financial woes--"went well beyond general or idle curiosity." Institute for Athletic Motivation, 170 Cal.Rptr. at 418. Accordingly, Essey was an "interested person" under Cal.Civ.Code Sec. 47(c), and Stratton's statements were qualifiedly privileged.
 
 
 21
 Because the jury found that Stratton's statement was not made maliciously, we vacate the special verdict awarding Abrams $50,000 in damages as a result of the defamatory statements. See Lundquist v. Reusser, 875 P.2d 1279, 1284-85 n. 10 (Cal.1994).
 
 IV. Non-Contractual Damages
 
 22
 Because we have reversed the judgment of liability on the defamation claim, we must vacate the jury award of all non-contractual damages. We cannot be certain upon which of the two alternative tort grounds for awarding such damages, see ER26: 4508, 4512, the jury based its award. Weiner v. Fleischman, 816 P.2d 892, 900 (Cal.1991); Brocklesby v. United States, 767 F.2d 1288, 1294 (9th Cir.1985), cert. denied, 474 U.S. 1101 (1986); see also Morrissey v. National Maritime Union of America, 544 F.2d 19, 26-27 (2d Cir.1976) (quoting United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 619 (1959)). Accordingly, the jury's special damages verdicts numbers 5-8, 11, and 13 are vacated. On remand, if the jury finds that Abrams can bring a tort action to recover damages he suffered as a result of his termination from the board of directors and/or as the treasurer, and that he is entitled to such damages, then the jury shall determine the amount of non-contractual damages arising only from that tort claim.
 
 V. Merger Clause Claim
 
 23
 Pacific argues that uncontradicted evidence established that the merger did not take place, "officially" or "actually," until January 1, 1991 at the earliest; therefore, judgment as a matter of law should be awarded to Pacific. However, Abrams presented testimony challenging that assertion, see, e.g., ER24: 3809-10, from which the jury could find for Abrams on this claim. Thus, the district court appropriately denied Pacific's motion for judgment as a matter of law on this issue.
 
 
 24
 Pacific has also raised several challenges to the district court's conduct of the damages portion of the trial concerning Pacific's alleged breach of the merger clause in Abrams' contract. We need not address Pacific's allegations that the district court abused its discretion in limiting testimony or in failing to amend sua sponte the pretrial order. We conclude that the district court committed reversible error in issuing jury instructions and special verdicts that removed an element of Abrams' claim, namely, a finding of liability for breach of this contractual clause. The combination of the jury instructions and the special verdict form permitted the jury to presume Pacific's liability under the merger clause and to determine only the extent of Abrams' damages resulting therefrom.
 
 
 25
 Pacific objected to the wording of the special verdict form. ER26: 4520. We review the trial court's formulation of its special verdict question for an abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir.1991). The questions asked must be "adequate to obtain a jury determination of the factual issues essential to judgment." Id. (quoting Mateyko v. Felix, 924 F.2d 824, 827 (9th Cir.1990), cert. denied, 502 U.S. 814 (1991)).
 
 
 26
 The district court instructed the jury that the pretrial order stipulated as a fact, "to be considered by you to be true," that the merger was "effective December 31, 1990." Although Pacific is bound by this stipulated fact, Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir.1993), Pacific did not stipulate to liability under this clause in the contract. See ER17: 9 (reserving as an issue for trial the question "Were defendants obligated to pay plaintiff 3 years compensation upon the merger of PCDCU and NIFCU?"). Nevertheless, during the liability phase of the trial, the jury was not asked to determine whether the merger clause had been breached, ER23; and during the damages phase, the district court refused Pacific's proposed instruction asking the jury to determine the meaning of the "effective date" of the merger relative to the merger clause. ER24: 4048-50. Moreover, before the jury retired to calculate the amount of damages to be awarded, the district court instructed that
 
 
 27
 You have heretofore returned your verdict on the issue of liability in favor of plaintiff against the defendants. Now you shall retire to deliberate on the issue of damages. ER26: 4517.
 
 
 28
 The special verdict (damages) form asked the jury "[d]id the plaintiff suffer economic damage due to defendant's failure to comply with the merger clause of the employment contract?" and "If you answered 'yes,' what is the amount?" Thus, the jury was asked to determine only whether economic damages were incurred, and, if so, the amount of damages: it was never called upon to determine whether Pacific was liable for breaching the merger clause of the contract. See ER26: 4519-20.[2] Because we find that the district court's jury instructions and special verdict misstated the elements of the plaintiff's case, Caballero, 956 F.2d at 205, and were not "adequate to obtain a jury determination of the factual issues essential to judgment," Floyd, 929 F.2d at 1395, we vacate the jury's special verdict (damages) # 3. On remand, the jury must determine whether Pacific breached the merger clause of Abrams' contract before they are asked to award damages for its breach.
 
 VI. Attorneys' Fees
 
 29
 Both parties have requested attorney's fees pursuant to the clause in Abrams' employment contract that entitles the "prevailing party" to reasonable attorney's fees in any action "to enforce or interpret the terms of this Agreement". Because it has not yet prevailed on Abrams' merger clause claim, Pacific is not yet entitled to reasonable attorneys' fees for services expended in appealing that claim. 580 Folsom Assocs. v. Prometheus Dev. Co., 272 Cal.Rptr. 227, 243 (Ct.App.1990) (finding that there is no prevailing party until a final judgment is entered on a claim), rev. denied, (Oct. 25, 1990). Accordingly, until a final judgment is rendered, each party shall bear its own costs for this appeal.
 
 CONCLUSION
 
 30
 Because the district court did not instruct the jury to determine whether Abrams' position as a director and as treasurer were reasonably incidental to his employment and thus covered by California's workers' compensation law, and because the jury was not asked to determine whether Pacific's actions in removing Abrams from those positions were outrageous or intentional tortious acts, the jury's award of emotional distress damages is vacated. Because Stratton's remarks were qualifiedly privileged and the jury determined that they were not uttered maliciously, the jury's award of damages for defamation is reversed. Because the district court's instructions and special verdict form on the merger clause in Abrams' employment contract did not require the jury to determine whether Pacific had breached that clause, the jury's award of damages on that claim is vacated.
 
 
 31
 The case is remanded for further proceedings consistent with this disposition.
 
 
 32
 REVERSED in part, VACATED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note also that Cal.Fin.Code Sec. 14760 makes it a misdemeanor for a director of a credit union to willfully do "any act in his or her capacity as director which is expressly forbidden by law...." and that Sec. 14752 allows for imposition of up to $10,000 in fines or imprisonment for less than one year for conviction of anyone who willfully violates the provisions of the California Credit Union Law
 
 
 [2]
 See also RT at 4495 (the district court instructing the jury that "You are going to decide if thoses breaches ... the areas that you found, [e.g.] breach of contract ... if that conduct by the defendant, has caused the plaintiff any damages, and if so, how much...."). Moreover, in regards to the merger clause, only one sentence after the district court read the jury the stipulation regarding the effective date of the merger, the court instructed that "You must first decide whether or not the plaintiff had been damaged by the conduct of the defendants. You've already decided that there was a breach. Now, would that breach cause plaintiff damages, and, if so, how much[?]" ER26: 4507 (emphasis added)