POOLER, Circuit Judge,
dissenting:
I respectfully dissent from the panel’s opinion. In this case, the jury’s initial verdict was an impermissible compromise between jurors who wanted to find that defendant-appellee Leonard Labonia was entitled to qualified immunity and jurors who wanted to award damages to plaintiff-appellant John Aczel. After the legal inconsistency was explained by the judge, the jury was invited to strike its damage award, if it indeed agreed that Labonia was entitled to qualified immunity. The jury could not reach agreement to do so. Nonetheless, the district court set aside the jury’s damages award. Never before have we permitted a district court to reconcile a jury’s inconsistent verdict, where the jury was asked to do so itself, but was unable to reach agreement. This result usurps the role of the jury and fails to accord proper deference to Aczel’s Seventh Amendment rights. I would vacate the district court’s judgment as to Aczel’s claims of excessive force and assault and battery against Labonia and remand for a new trial on those counts.
I. The Jury’s Verdict
A. Inconsistency
“[T]he proper approach when faced with seemingly inconsistent verdicts is not to credit one finding and vacate the other.” Harris v. Niagara Mohawk Power Corp., 252 F.3d 592, 598 (2d Cir.2001). “[P]roper deference to the parties’ Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding.” Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir.2001). In Finnegan v. Fountain, 915 F.2d 817, 820 (2d Cir.1990), a jury concluded that an officer used excessive force “in good faith” but awarded punitive damages. The award of punitive damages relied on a finding of bad faith. We concluded that the verdict could not be logically reconciled. Id.; see also Brooks v. Brattleboro Mem’l Hosp., 958 F.2d 525, 529 (2d Cir.1992) (verdict finding defendants liable for negligence in causing pain and suffering but awarding zero in damages irreconcilable).
The majority holds that Finnegan is not controlling because a finding that a plain *63 tiff suffered damages as a result of a defendant’s excessive force is not inconsistent with a finding of qualified immunity. Here, the terms of the verdict sheet asked only the amount of damages proximately caused by Labonia’s conduct, not whether the jury had found Labonia liable and chosen to grant an award of damages. The problem with the majority’s reasoning is that it considers the verdict sheet in a vacuum, without regard for (1) the district court’s clear instructions that the question of qualified immunity went to the issue of liability and the jury was not to consider damages “unless and until” it found liability, (2) the jury’s inability to reconcile its verdict once the inconsistency was made clear, and (3) the notable absence of the arguments advanced by the majority from the parties’ briefs and the district court’s opinion.
The jury’s verdict must be understood in the context of the verdict sheet’s structure of the court’s instructions. The verdict sheet was divided into a section for liability and a section for damages. In the liability section, question A2 asked whether Labo-nia had violated Aczel’s Fourth Amendment right to be free from excessive force. The jury marked “yes.” The jury was then directed to answer subquestion A2(a) — whether Labonia had proved “a reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest.” The jury marked “yes” in response to that question as well. Prior to deliberations, the jury was instructed that the “qualified immunity defense” was a defense “to liability for damages.” (emphasis added). The placement of these questions on the verdict sheet and the district court’s instructions made clear that both questions pertained to liability.
On the damages section of the verdict sheet, question B1 asked, “if any, of Interrogatories A1-A6 you have answered ‘yes,’ what amount of compensatory damages has Plaintiff proved were proximately caused by the acts of any Defendant?” In connection with this inquiry, the district court instructed the jury:
Now in the next part these instructions shall cover the question of damages, if you reach that question. The fact that I charge you as to damages should not be taken as a suggestion that you should reach the question of damages. I do so only in case you decide the question of liability; that is, in favor of the plaintiff. You should not consider the question of damages unless and until you decide the issue of liability in one or more respects in favor of the plaintiff.[1]
The instructions repeatedly referred to the jury’s damages determination as an “award” to be rendered by the jury, for purposes of “compensation.” Defendants did not object to these instructions, or protest that the verdict form only called for a special verdict. The damages question did not state that a finding of qualified immunity in response to subquestion A2(a) would preclude an award. The jury awarded $12,078.61 in damages, notwithstanding its finding of qualified immunity.
The majority asserts that it is “speculation]” to conclude that “the jury’s answer to Question B1 expressed an anomalous award of damages.” The majority concludes that the jury’s $12,078.61 award represents a simple response to the verdict *64 sheet’s request for a factual finding as to the amount of Aczel’s damages that were “proximately caused” by Labonia. I would agree, if the verdict sheet was the only evidence in the record. But the majority ignores the court’s clear instructions. No “speculation” is required to reach the conclusion that the jury did as instructed. We presume juries follow instructions. See, e.g., United States v. Stewart, 433 F.3d 273, 307 (2d Cir.2006). Perhaps the majority would have district courts do away with the practice of instructing jurors on the law.
Moreover, no participant in this trial ever advanced the majority’s strict interpretation of the text of the verdict sheet. The judge, jury, and parties all agreed that the jury’s $12,078.61 damages finding was an “award” of damages inconsistent with a finding of qualified immunity. As the district court acknowledged, the jury’s confusion resulted from “the overly simplistic instruction that led to [its] answering Question B.l [damages].” Indeed, the majority recognizes that “[o]n receipt of the verdict form, the court was apparently surprised to receive an answer stating Plaintiffs damages together with an answer finding qualified immunity that required judgment in favor of Defendant.” The defendants also agreed that the district court “inadvertently misle[ ]d the jury as to their ability to award compensatory damages upon a finding of qualified immunity based upon ambiguity in the verdict form.” Neither in the district court, nor on appeal, has Labonia ever advanced the argument made by the majority — -that the jury’s damages award is consistent with a finding of qualified immunity. As for the jury, it sent a note explaining that by its verdict, it “wanted expenses incurred paid to Mr. Aczel,” making clear it intended to award damages.
If there had been any doubt at the time the jury returned the verdict, the fact that the jury was unable to agree to the same verdict after the law was clarified makes the inconsistency of the initial verdict undeniable. The court informed the jury that if Labonia was entitled to qualified immunity, “that’s the end of the case, and there would be no damages to be awarded.” Upon receiving the district court’s clarification, the jury foreperson responded that she now understood “completely.” Without objection from the parties, the district judge sent the jury “back in the jury room,” stating, “I have not accepted your verdict as far as A.2. [excessive force] and A.2.a. [qualified immunity] is concerned, nor B.l [damages] ... and ... you should reconsider what you have indicated to me that is inconsistent.” He also suggested that the jury could “remove the inconsistency ... simply by lining out [the damages number] you’ve put in B.l....” Having failed to object to the district court’s decision to resubmit the case to the jury, defendants waived any argument that the jury’s initial verdict was consistent.
After further deliberation, the jury sent a note stating:
We were trying to compromise among very rigid positions — wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability. Now we believe we can’t do both — Is this true? If we keep going, we might want to change other parts of the verdict already admitted. Is this possible?
The district court again instructed the jury that it could not award damages if it found Labonia entitled to qualified immunity, and refused the jury’s request to “change other parts of the verdict already admitted.” The jurors returned to continue deliberations, but were ultimately unable to reach any agreement to resolve the verdict’s inconsistency.
*65 Thereafter, the district court (1) denied Labonia’s motion for judgment as a matter of law, (2) granted Aczel’s motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure as to his claim of excessive force, and (3) denied Aczel’s motion for a mistrial as moot. While the decision was on appeal, the district judge had a change of heart, and invited Labonia to move for reconsideration of its decision to grant a new trial. Labonia did not then and does not now raise the argument that forms the backbone of the majority opinion — the distinction between a general and a special verdict under Rule 49(a) of the Federal Rules of Civil Procedure. Nor does the district court’s opinion granting Labonia’s motion for reconsideration refer to that distinction.
Understood in context, the jury’s damages award was the bottom line — embodying its ultimate assessment of the case. The Seventh Amendment implications are amplified because the district court reconciled the inconsistent verdict by setting aside the jury’s ultimate conclusion. See Ratigan v. N.Y. Cent. R.R. Co., 291 F.2d 548, 557-58 (2d Cir.1961) (Friendly, J., dissenting) (arguing that there was no reason to strike the jury’s answer to the ultimate question in the case, a mixed question of law and fact, on the basis of its response to a factual question, because the result would be one “quite evidently opposed to the result the jury intended.”).[2] Thus, I conclude the district court erred in denying Aczel’s motion for a new trial.[3]
B. Mistrial
I would also hold that the district court erred in denying Aczel’s motion for a mistrial. The district court impermissibly disregarded the jury’s inability to reconcile its verdict and reinstated voided findings of fact. We have held:
If [an] inconsistency between special verdict answers is noticed prior to the dismissal of the jury, the trial court has the discretion to resubmit the issues to the jury with a request for clarification, whether or not the parties themselves request clarification. If the court elects not to seek clarification from the jury, or if the inconsistency is not noticed until after the jury has been dismissed, the *66 court must take one of two actions. [1] It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. Thus, where there is a view of the case that makes the jury’s answers to special interrogatories consistent, they must be resolved that way. [2] If there is no way to harmonize the jury’s answers, the court must order a new trial.
Auwood v. Harry Brandt Booking Office, Inc., 850 F.2d 884, 891 (2d Cir.1988) (citations, quotation marks, and alterations omitted). No authority supports the position that a district court may reconcile a jury’s inconsistent verdicts after the inconsistency was explained to the jury, the jury was given the opportunity to reconcile its verdict, and the jury was unable to do so itself. In such a circumstance, the appropriate course of action is to declare a mistrial.
This problem cannot be avoided by arguing that the district court committed plain error when it resubmitted the case to the jury — rather than entering an appropriate judgment based on the facts established by the special verdict answers under Rule 49(b)(3)(A). This is not the first time an ambiguous verdict sheet has confused a jury to believe it could award damages notwithstanding a finding of qualified immunity. In Larson v. Neimi, 9 F.3d 1397, 1401 (9th Cir.1993), the same problem occurred, the case was resubmitted to the jury, and the jury agreed to change its verdict to find the officer was not entitled to qualified immunity. The Ninth Circuit held that, given the fact that the parties submitted the proposed verdict sheet and did not object to resubmission of the case to the jury, any error was invited. Id. Likewise, Labonia did not object to resubmission of the case to the jury, and therefore cannot (and does not) now argue that the district court abused its discretion in resubmitting the case to the jury. The Ninth Circuit found the argument that the district judge “should have first tried to reconcile the answers ... unpersuasive.” Id. at 1401-02. It concluded that:
Of course, it makes a good deal of sense to require trial and appellate courts to do all they can to reconcile special verdict answers when the only alternative is ordering a new trial. However, when the very body that issued the ambiguous or inconsistent verdict is still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness. That is not to say that a court could never abuse its discretion when it resubmitted a case to the jury with an appropriate explanation of the reason. That case might possibly exist, but it is not the case before us.
Id. at 1402. Here, the district court acted within its discretion in resubmitting the case to the jury, in light of the tension, if not manifest inconsistency, in the verdict. The problem is that unlike the judge in Larson, this district court chose not to abide by the ultimate result — the hung jury. This was error.
The majority relies heavily on the fact that, before the jury had been informed that it could not compromise as to qualified immunity and damages, the jury was polled, and all the jurors stated their agreement on qualified immunity. I conclude that this initial verdict was void for two reasons. First, before he sent them to deliberate again, the judge informed the jury that he had not accepted their verdict as to whether Labonia used excessive force, whether Labonia was entitled to qualified immunity, or whether Aczel was entitled to damages. Second, once the law was clarified for the jury, they were unable to confirm their intent to return a verdict in Labonia’s favor on qualified immunity by striking out the damages award. Thus, *67 we must presume that, but for their mistake as to the law, the jury would not have been unanimous on the factual finding that Labonia was entitled to qualified immunity in the first place. Ignoring these facts, the majority characterizes the jury’s decision to make “no change to its findings on the verdict form,” as a decision to “continue[ ] to report” the same findings that the jury had been instructed were irreconcilable and void. But the jury did not continue to report any agreement. Before the jury was excused, it was not polled again to determine whether each juror still agreed to the prior findings. The jury had reached “an unresolvable impasse.”
Insofar as the jury’s initial verdicts as to qualified immunity and damages were void, there was nothing for the district court to reconcile, and its decision to do so was reversible error. Cf. Rios v. Empresas Lineas Maritimas Argentinas, 575 F.2d 986, 990 (1st Cir.1978) (“Since the trial court refused to accept the first verdict, there were not two verdicts here.”).
C. Compromise
Even assuming the district judge had not erroneously reinstated a void verdict, I would conclude that the district court’s post hoc attempt to harmonize that verdict was an abuse of discretion, because we must presume the jury’s initial verdict was the result of an invalid compromise. “A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages.” Mekdeci v. Merrell Nat’l Labs., 711 F.2d 1510, 1513 (11th Cir.1983) (citing Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1053 (5th Cir.1972)). Indicia of an improper compromise verdict may include whether the size of the verdict corresponds with the facts adduced at trial, the length of deliberations, the degree to which liability was contested at trial, and the jury’s communications with the judge. Mekdeci 711 F.2d at 1515; see also Atkins v. New York City, 143 F.3d 100, 104 (2d Cir.1998). Where these indi-cia go to show that a “jury compromised the issues of liability and damages, therefore rendering them inseparable,” a new trial may be required. Mekdeci, 711 F.2d at 1515.
We do not need to look hard at the circumstantial evidence in this case to determine whether a compromise occurred— the jurors sent the district judge a note stating plainly that they “were trying to compromise among very rigid positions— wanted expenses incurred paid to Mr. Ac-zel and the policeman absolved of liability.” The note does not specify which jurors subscribed to which “rigid positions.” The “compromise” could be explained in one of two ways: (1) some jurors thought Labo-nia was not entitled to qualified immunity and reached a compromise with those who did not (Aczel’s position), (2) the whole jury agreed Labonia was entitled to qualified immunity, but wanted to award damages anyway (Labonia’s position). The majority muses that, “[wjhile the word ‘compromise’ is often used in the context of resolving disagreements among different persons, that is not its only meaning. A single individual can seek a compromise as among conflicting desires, and so can a unanimous jury ...”
If the jury had meant the word “compromise” in the sense of a theoretical compromise between conflicting ideas, presumably, it would have been able to reconcile its verdict once informed that its theoretical compromise was not permitted by law. The district court assumed the jury’s ultimate inability to reach a verdict was a result of the desire of some jurors to evade the court’s instructions and award damages out of sympathy, rather than dis *68 agreement as to the operative fact question of qualified immunity. The majority agrees that the sympathy verdict explanation is “at least equally likely” as the explanation that the jurors compromised as to the qualified immunity finding, and therefore, the district court “could properly strike” the jury’s damages award as “contrary to law.”
I do not agree with this condescending characterization of the jury’s decision to award damages. We cannot accept an explanation of a jury’s verdict that relies on jury misconduct where there is “an equally reasonable and perhaps even better explanation which involves no jury misconduct.” Ajax Hardware Mfg. Corp. v. Industrial Plants Corp., 569 F.2d 181, 184 (2d Cir.1977).[4] The better explanation here is that the jury reached an impermissible compromise verdict due not to misconduct, but to confusion about the law resulting from the district court’s instructions. After the confusion was cleared up, the jury hung.
The majority notes that an “instructive” analogy might be if a district court “at a bench trial, found that the defendant was not liable to the plaintiff but nonetheless awarded damages based on the judge’s perception that the defendant had behaved nastily (although not illegally) toward the plaintiff.” In that situation, I agree that “in all likelihood, we would not order a new trial by reason of the inconsistency, but would merely strike the illegal damages award and direct the entry of judgment in favor of the defendant.” The district judge in the example is a single decision-maker. The error would be a simple error of law. A unanimous jury verdict, by contrast, must be reached through the agreement of multiple jurors who must be instructed on the law by the district court. This situation carries the risk of impermissible compromises as to fact questions based on misleading instructions as to the law — exactly what occurred here.[5]
I do not base my dissent on a “pyramid of speculations” about what transpired in the jury room. Rather, my conclusions follow from the well-established rules that we presume juries follow instructions and do not engage in misconduct. Nor does my approach require a new trial whenever “a possibility exists that jurors with con *69 flicting views had compromised.” Rather, I would hold that where (1) the court finds a jury’s verdict inconsistent, (2) the court resubmits the case to the jury to reconcile the inconsistent verdict, (3) the jury informs the court that its initial verdict was a “compromise[ ]” based on the court’s confusing instructions, and (4) the jury is unable to reconcile the verdict, then the court must order a new trial. Parties wishing to avoid “costly and wasteful retrial[s]” are well advised to object to misleading jury instructions and special verdict sheets. To save costs, it seems the majority would assume the worst of this jury and disrespect its ultimate inability to reach a decision in this case. I cannot agree with this result.
II. Rule 60(b)
I also disagree with the majority’s conclusion that Labonia’s motion for reconsideration was timely under Rule 60(b) of the Federal Rules of Civil Procedure. That motion was not filed until March 31, 2008, eighteen months after the district court’s original ruling on the motion for judgment as a matter of law on September 22, 2006. A motion for reconsideration brought under Rule 60(b)(1), which provides for relief from a judgment based on “mistake, inadvertence, surprise or excusable neglect,” must be made “no more than a year after the entry of the judgment or order or the date of the proceeding.” Fed.R.Civ.P. 60(c). Labonia’s motion for reconsideration did not state which subsection of Rule 60(b) it was brought under, but the district court based its decision on the catch-all provision of Rule 60(b)(6), which can be used “to accomplish justice,” and does not trigger the one-year limitation. See Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 190 n. 8 (2d Cir.2006).
Rule 60(b)(6) grants “grants federal courts broad authority to relieve a party from a final judgment ‘upon such terms as are just,’ provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).” Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (emphasis added); see also Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir.1986) (“As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect.”). In this case, the district court invited the Rule 60(b) motion upon realization of its own purported mistake as to whether the inconsistency in the jury’s verdict could have been eliminated. “Mistake” is a ground under Rule 60(b)(1). Thus, despite the district court’s treatment of the motion as one brought in the face of extraordinary circumstances, the one-year limitation must apply, and Labonia’s motion was untimely.
The district court reasoned that Labo-nia’s motion was not untimely because its “September 22nd Ruling was not final when entered because it was appealed. Finality came with the decision of the Court of Appeals, within four days of which Defendant Labonia filed his present motion.” This is incorrect. The pendency of an appeal does not toll the time for filing a Rule 60(b) motion. King v. First Am. Investigations, Inc., 287 F.3d 91, 94 (2d Cir.2002) (“King argues that an appeal of the judgment tolls the one year period for filing a Rule 60(b) motion.... The rule is to the contrary.”). “Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court.” Stone v. I.N.S., 514 U.S. 386, 400, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995); see also Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir.2001) (holding that a district court has jurisdiction to deny Rule 60(b) motions during the pendency of an appeal or to indicate intent *70 to grant a Rule 60(b) motion upon remand); Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir.1992) (per curiam) (same).
This Court’s summary order, which denied defendants’ appeal of the district court’s initial grant of a new trial, provided that “[n]othing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled.” Aczel v. Labonia, 271 Fed.Appx. 73 (2d Cir.2008). The issue of whether a motion for reconsideration would be timely under Rule 60(b) was not before this Court at that time. Our order did not reach any holding on the question.[6]
To preserve his right to Rule 60(b) relief, Labonia should have filed such a motion. The district court’s decision to allow Labonia’s late motion was based on an error of law, and therefore, I would conclude that it is an abuse of discretion.
I must therefore respectfully dissent.

. The majority emphasizes the phrase “in one or more respects” as though it somehow implied that the jury could reach the damages question notwithstanding a finding of qualified immunity. The phrase "one or more respects” refers to a finding of liability on one or more counts. The jury was instructed that a finding of liability on any federal claim entailed a finding that the officer was not entitled to qualified immunity.

. In Ratigan, the majority concluded that the jury's legal conclusion that a defendant’s negligence was “passive” did not invalidate its factual finding that the defendant had committed an act of negligence which was "active” as a matter of law. Id. at 555. This logic is inconsistent with our more recent decision in Finnegan v. Fountain, 915 F.2d 817, 820 (2d Cir.1990), in which we looked to the factual predicates for the jury's decision to award punitive damages award (arguably a legal conclusion) and decided that the verdict could not be logically reconciled. Moreover, as Judge Friendly noted, in Ratigan, the district judge did not give the jury an opportunity to reconcile the verdict itself. Id. at 556. Here, the jury was given the opportunity to reconcile its inconsistent verdict, which it could not do. In none of the cases cited by Labonia on setting aside a damages award was there such a circumstance. See infra n. 5.

. Aczel also argues that due to the jury’s request to reconsider the admitted portions of its verdict, a new trial was required as to all claims and all defendants. I do not agree. The inconsistencies in the jury's verdict pertained to one defendant, Labonia, and only two counts: (1) excessive force and (2) assault and battery. With respect to the assault and batteiy count, Labonia himself argues that, under the circumstances of this case, the jury’s conclusion that Labonia was not liable for assault and battery is inconsistent with an award of damages for excess force. Defs.’ Br. at 44-46. Thus, I would vacate the judgment of the district court as to defendant Labonia as to Count 2, excessive force, and Count 3, assault and battery, and remand this matter for a new trial as to those counts against Labonia.

. In Ajax, both parties agreed that if the plaintiff was entitled to damages at all, it was entitled to a liquidated sum, and the jury found liability but awarded damages of less than half the amount of the liquidated damages. 569 F.2d at 183-84. We held that "the reasonable possibility of a compromise verdict warranted a new trial on all issues." Id. at 185.

. The cases Labonia cites from other circuits on setting aside an illegal damages award all involve juries that returned verdicts that were not in compliance with the court’s unambiguous instructions, without a misleading verdict sheet like the one in this case, which made it seem that a compromise was permissible, and where no clarification was requested from the jury prior to discharge. See Floyd v. Laws, 929 F.2d 1390, 1398 (9th Cir.1991) (" '[I]f the district court has correctly found that the jury’s answer to a question that was supposed tó terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury’s necessarily conflicting answers to any other questions.’ ”) (quoting White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir.1987) (emphasis omitted)); Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10-11 (1st Cir.1991) ("All of the alleged inconsistencies in the special verdicts stem from the jury’s failure to comply with the written instructions on the special verdict form and with the companion explanations given in the charge to the jury.”); cf. Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1058 (9th Cir.2003) (concluding that "resubmitting an inconsistent verdict" is preferable where the jury has not been discharged, although "[a]n entirely different situation is present where the jury has been dismissed. There, dismissal of surplus-age ... makes sense.”).

. Nor did we "hmt[]” as to how this appeal would be resolved. We are not an oracle that offers vague prophecies to litigants and district courts through oblique remarks in summary orders.