08-2741-cv
*Aczel v. Labonia*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: May 27, 2009                    Decided: October 9, 2009)

Docket No. 08-2741-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

John Aczel,

        *Plaintiff-Appellant*,

v.

Leonard Labonia and Ethan Mable,

        *Defendants-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, POOLER, B.D. PARKER, *Circuit Judges*.

Plaintiff John Aczel appeals from the ruling of the United States District Court for the District of Connecticut (Dorsey, *J.*), which granted judgment as a matter of law to Defendant, Police Officer Leonard Labonia, on Plaintiff's claim, under 42 U.S.C. § 1983, of violation of his constitutional rights by use of excessive force. The district court granted judgment to Defendant after a jury trial in which the jury found that Defendant used excessive force and that damages of $12,078.61 were proximately caused by Defendant's acts but that Defendant was entitled to

1

qualified immunity because of his good faith objectively reasonable belief that his actions were reasonable under the circumstances. Because the jurors unanimously found that Defendant had proven entitlement to qualified immunity and because there was no flaw which required invalidation of that finding, the Court of Appeals (Leval, *J.*) affirms the grant of judgment.

Judge Pooler dissents by separate opinion.

KEITH P. STURGES, Goldstein and Peck, P.C., Bridgeport, CT (William J. Kupinse, Jr., on the brief), for *Plaintiff-Appellant*.

THOMAS R. GERARDE, Howd & Ludorf, LLC, Hartford, CT (Beatrice S. Jordan, on the brief), for *Defendants-Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff John Aczel appeals from the judgment of the United States District Court for the District of Connecticut (Dorsey, *J.*) granting judgment to Defendant, Police Officer Leonard Labonia, on Plaintiff's claim of use of excessive force. The case presents an unusual procedural history. The jury answered interrogatories in a special verdict form, finding that Plaintiff had proved that Labonia used excessive force and that $12,078.61 in damages were proximately caused by Labonia's acts but that Labonia was entitled to qualified immunity because he had an objectively reasonable belief that his conduct was justified under the circumstances. Treating the jury's factual finding that $12,078.61 in damages were proximately caused by Defendant's excessive force as if it were a general verdict *awarding* damages under Rule 49(b), Fed. R. Civ. P., which would be inconsistent with the jury's finding that Defendant was entitled to qualified immunity, the district court initially rejected the verdict and ordered a new trial. Both sides

2

appealed. Upon remand by this court, which left the district court free to reconsider its initial ruling, the district court granted Labonia's motion for reconsideration and for judgment. Plaintiff appealed again. Because the jury unanimously found that Defendant was entitled to qualified immunity and there was no flaw in the finding that required the court to reject it, the district court acted within its discretion in entering judgment for Defendant and denying Plaintiff's motion for a new trial. We therefore affirm the judgment.

## BACKGROUND

Aczel brought this action against Labonia and Ethan Mable, both police officers of the city of Danbury, Connecticut, alleging *inter alia* federal constitutional claims of false arrest and use of excessive force and state law claims of assault, false imprisonment, and abuse of process. The matter was tried before a jury in the district court. Plaintiff testified that he did not act improperly at any time. He contended that the defendants had no justification for arresting him on charges of interfering with a police officer and breach of the peace in violation of Connecticut General Statutes §§ 53a-167a and 53a-181 and that, while arresting him, the defendants choked him, kneed him in the head, and kicked him repeatedly. Defendant Labonia offered evidence that Aczel was intoxicated and resisted arrest and that the officers took necessary incremental steps to restrain and subdue him.

The court instructed the jury what facts Plaintiff needed to prove to establish that a defendant had violated his rights. Then, on the subject of qualified immunity with respect to Plaintiff's federal civil rights claims, the court properly instructed the jury, in accord with the Supreme Court's ruling in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and without objection from Plaintiff, to the effect that a defendant had an absolute defense to liability if, at the time of

his interaction with Plaintiff, the defendant had an objectively reasonable belief that his actions were justified under the circumstances.

With respect to damages, the court instructed as follows,

The fact that I charge you as to damages should not be taken as a suggestion that you should reach the question of damages. I do so only in case you decide the question of liability; that is, in favor of the plaintiff. You should not consider the question of damages unless and until you decide the issue of liability *in one or more respects* in favor of the plaintiff.

(Emphasis added).

With the consent of the parties, the court distributed to the jurors a special verdict form, in accordance with Rule 49(b)(1), Fed. R. Civ. P. This was in the form of a questionnaire, which asked the jurors to answer specific factual questions from which the ultimate verdict and judgment might be derived. In Part A, as to each of Plaintiff's claims, the form asked whether Plaintiff had proved the facts necessary to establish a violation of his rights. As to each claim of violation of a federal constitutional right that the jury found Plaintiff had established, the form asked whether Defendant had proved entitlement to qualified immunity. For example, as to the claim of use of excessive force, question A2(a) asked whether Defendant had proved entitlement to qualified immunity by proving "a reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest." Consistent with its oral instructions to consider the question of damages if the jury decided the issue of liability *in one or more respects* in favor of the plaintiff, Part B then instructed the jury to state the amount of compensatory damages that were proximately caused by the acts of Defendant for any claim as to which the jury had answered "Yes" to the interrogatory in Part A. Thus, under the directions of the questionnaire, the jurors were required to state the compensatory damages proximately

4

caused by a defendant's wrongful conduct notwithstanding a finding of qualified immunity as to such claim.

After a period of deliberations, the jury announced that it had reached a decision and returned the verdict form, signed by the foreperson. The jury completely exonerated the defendant Mable. It exonerated Labonia on every claim except use of excessive force, answering "Yes" to question A2, thus indicating its finding that Labonia violated Plaintiff's right under the Fourth Amendment to be free of excessive force. As to this claim, however, the jury also answered question A2(a) stating that Labonia "proved . . . entitlement to qualified immunity by proving [his] reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest." Consistent with the instruction to answer question B1 on proximately caused damages if the jury gave a "Yes" answer to any question in Part A, the jury entered $12,078.61 as the "amount of compensatory damages [Plaintiff has] proved were proximately caused by" Labonia's wrongful acts.

The court then polled the jurors and, on the basis of the jury's "No" answers as to every claim other than the claim of excessive force against Labonia, accepted the verdicts as resolving these other claims. As for the claim that Labonia used excessive force, each juror affirmed that it was the juror's intention to answer that Labonia violated Plaintiff's right to be free from excessive force and that Labonia was entitled to qualified immunity for the claim of excessive force on the basis of his objective and reasonable belief that the force he used was reasonable in the circumstances. The court then instructed the jury that no damages could be awarded against Labonia if he proved an entitlement to qualified immunity. The court told the jurors to return to their deliberations to assure themselves that they had answered the pertinent questions correctly.

Treating the jury's answer to question B1 as if it represented a general verdict (an award of $12,078.61 in damages) rather than the answer to a special verdict question asking the factual question what damages were proximately caused by Defendant's use of excessive force, irrespective of Defendant's entitlement to qualified immunity, the court instructed the jury to strike the answer to B1 if Labonia was entitled to qualified immunity on the claim of excessive force.

The jury then sent the court a note stating, "We were trying to compromise among very rigid positions - wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability.  Now we believe we can't do both - is this true?"  The district court confirmed that the jury could not do both.  The jury's note also asked whether the jurors could reopen claims their verdict had resolved, which the court refused.   The court instructed the jury to resume deliberations on the excessive force claim.  When the jurors advised that they could go no further, the court discharged the jury.  As the jury had made no change to its findings on the verdict form, it continued to report the findings that Labonia used excessive force, that his use of excessive force caused damage to Aczel in the amount of $12,078.61, and that Labonia had proved entitlement to immunity.

Defendants moved for judgment as a matter of law, and Plaintiff moved for a new trial as to all claims, contending the verdicts should be voided by reason of inconsistency.  The district court denied Defendants' motion for judgment as a matter of law and granted Plaintiff's motion for a new trial.  Both parties appealed.

During pendency of that first appeal, the district court issued an additional order clarifying and articulating the reasons for its decisions on the parties' motions for judgment and

6

new trial. The district court explained that the new trial was granted only with respect to Plaintiff's claim of excessive force against Labonia and Labonia's entitlement to qualified immunity. The district court also noted that the verdicts on excessive force and on qualified immunity were not inconsistent. Potential inconsistency existed only because, as the court viewed it, the jury awarded compensatory damages. Expressing second thoughts on the wisdom and propriety of its new trial order, the court further stated, "In retrospect, it may have been more proper for the Court to simply have accepted the verdict as to the excessive force and qualified immunity claims and to have rejected the damages award, thereby eliminating the inconsistency."

On March 27, 2008, this court issued an unpublished summary order, which affirmed the denial of Labonia's motion for judgment as a matter of law, dismissed the remainder of the appeals for lack of appellate jurisdiction due to lack of a final judgment, and remanded the case to the district court. *Aczel v. Labonia*, 271 Fed.Appx. 73 (2d Cir. 2008). As for the denial of judgment based on qualified immunity, we explained that, once the court had vacated the jury's decision on this issue, it was left with a record of conflicting evidence and no jury finding, which precluded judgment as a matter of law. *Id.* at 75. However, noting the district court's interim expression of misgivings about its resolution of the case, we hinted, "Nothing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled." *Id.*

Labonia then moved under Fed. R. Civ. P. 60(b) for reconsideration and for judgment as a matter of law. The district court concluded that its proper course of action was to accept the jury's finding that Labonia was entitled to qualified immunity, and on this basis enter judgment in Labonia's favor. Plaintiff brought this appeal.

7

**DISCUSSION**

**I.      Plaintiff's Motion for New Trial**

Plaintiff contends the district court erred in denying his motion for a new trial. The jury, however, found facts which entitled Defendant to qualified immunity. Unless some flaw in the proceedings necessarily invalidated that finding, the district court acted within its discretion in relying on it to grant judgment to Defendant.

Plaintiff argues that the jury's verdict cannot be sustained or relied on in any respect because it exhibited internal inconsistency in awarding damages while at the same time finding that Defendant was entitled to qualified immunity. He relies on *Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990), in which this court vacated a judgment entered pursuant to a jury verdict due to the irreconcilability of the jury's findings. His reliance on *Finnegan* is unjustified, as the facts here are quite different. In *Finnegan*, the jury found that the defendant police officer was entitled to qualified immunity because he "reasonably believed that he was acting in good faith." *Id.* at 819. The following day, however, the jury awarded punitive damages against that officer finding that he acted "maliciously or wantonly or oppressively." *Id.* We explained that the latter finding plainly contradicted the former. We therefore remanded for a new trial. *Id.* at 821.

Although there is superficial similarity, the difference between this case and *Finnegan* is crucial. The *Finnegan* jury's finding that the defendant "reasonably believed that he was acting in good faith" could not be reconciled with its finding that he acted "maliciously or wantonly or oppressively." By definition, one who acts "maliciously" does not reasonably believe he is "acting in good faith." Because the finding of the defendant's reasonable belief that he acted in good faith was contradicted by the jury's finding that he acted maliciously, the finding of good

8

faith could not be credited, so that no basis remained for finding qualified immunity. The finding of malice was similarly undermined by the finding of good faith. Upon invalidation of the jury's mutually contradictory findings, there were no surviving facts found by the jury that mandated any resolution of the case. Accordingly retrial was the solution.

Here, in contrast, there was no inconsistency in the jury's factual findings. Those factual findings were (a) that Labonia used excessive force and (b) that Plaintiff suffered some damages caused by that use of excessive force, but that (c) Labonia reasonably believed his conduct was justified in the circumstances and was therefore entitled to qualified immunity. There is no inconsistency in those findings. If a police officer uses excessive force in violation of a plaintiff's constitutional rights, it is to be expected that the victim will suffer harm proximately caused by the excessive force. If, however, the police officer proves the facts that entitle him to qualified immunity, under *Harlow* judgment must be entered in his favor, notwithstanding his having violated the plaintiff's rights and caused damages.

The crucial finding was of facts that entitle Lebonia to immunity. If the jury's findings to that effect are credited, under *Harlow* they mandate judgment in favor of Defendant, regardless of whether Defendant violated Plaintiff's rights and caused him damages. In *Finnegan*, we ruled that the comparable finding could not be credited because it was contradicted by the jury's finding of malice. Here, the jury made no inconsistent finding to cast doubt on whether it had truly found entitlement to immunity.

In his effort to persuade us that the jury's finding of entitlement to immunity was contradicted and should not be credited, Plaintiff mischaracterizes the verdict form and the specific questions and instructions written on it. Plaintiff characterizes the answer to B1 as if it

9

were a general verdict, *awarding* compensatory damages to Plaintiff. His argument runs, essentially: The jury was told that Defendant could not be held liable for damages if Defendant acted with a reasonable good faith belief which entitled him to qualified immunity. Thus, the jury's award of a general verdict giving damages to Plaintiff necessarily implies a finding that Defendant was not entitled to qualified immunity. That finding necessarily contradicts, discredits, and invalidates the finding that Defendant was entitled to qualified immunity, and, as in *Finnegan*, requires a new trial.

The problem with Plaintiff's argument is that it is based on a mischaracterization of the jury's answers on the verdict form. Question B1 did not call for a general verdict. The question was not whether the jury found Defendant liable to Plaintiff, much less what compensatory damages it *awarded* on the basis of that liability. The verdict form given by the court to the jury called for a special verdict asking the jury to determine the facts, as authorized by Rule 49(a). *See* Fed. R. Civ. P. 49(a) ("The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact."); *also* Black's Law Dictionary 1696-97 (9th ed. 2009) (defining "general verdict" as "A verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions" and "special verdict" as "A verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict"). The form instructed the jury to state the amount of damages proximately caused by Defendant's use of excessive force. According to the form, the jury was to follow that instruction regardless of whether the jury found Defendant entitled to qualified immunity. The jury's filling in of a dollar amount representing harm caused by the excessive force therefore in no way contradicted the jury's finding that Defendant was

10

entitled to immunity. The jury's answer represented a finding of fact as to the damages caused by Labonia's use of force and not an award of damages, which the verdict form did not request or call for. The finding that Labonia's use of excessive force caused damage to Aczel in the amount of $12,078.61 did not contradict the finding of facts which entitled Libonia to immunity from judgment. They addressed different issues.[1]

Nor is this conclusion affected by the jury's note responding to the court's supplemental comments. In its note, the jury expressed frustration arising from conflicting objectives which the jury wished to compromise. The jury said it wanted to reimburse Plaintiff for expenses he incurred but wanted also to absolve Officer Labonia. The jury recognized in its note that it could not do both, and ultimately made no change in its verdict form. The fact that the jury expressed a desire to reimburse Aczel's expenses did not discredit its finding that Labonia was entitled to qualified immunity, which each juror confirmed upon the polling of the jury, and which the jury left untouched when the court offered the opportunity to change the findings.

Judge Pooler, in her dissenting opinion, argues first that, contrary to what was unmistakably written on the verdict form, we should construe the answer to Question B1 as a general verdict awarding damages because the court's instructions to the jury occasionally referred to an award. If the jury wanted to award damages to Plaintiff and tried to do so in entering the figure $12,078.61, Judge Pooler argues, that contradicts its finding of qualified

---

[1] It is not surprising that Plaintiff has misconstrued the jury's verdict in view of the fact that, at least temporarily, the district court did so as well. On receipt of the verdict form, the court was apparently surprised to receive an answer stating Plaintiff's damages together with an answer finding qualified immunity that required judgment in favor of Defendant. The court failed at that point to recognize that its instructions written on the verdict form called for an answer to the damages question by reason of the "Yes" answer as to the use of excessive force, notwithstanding the finding of Labonia's entitlement to qualified immunity.

11

immunity because the jury had been told that Plaintiff could not win a verdict if Labonia was entitled to qualified immunity.

We reject her argument for two reasons. As a first response, Judge Pooler's contention that the answer to Question B1 expressed an anomalous award of damages, rather than the answer to a factual question put by the form is mere speculation. An appellate court should not invalidate a judgment entered on the basis of a facially valid and proper jury verdict and require a costly and wasteful retrial merely because of a speculative possibility that facially consistent jury findings might have represented an inconsistency. *See Akermanis v. Sea-Land Serv.,* 688 F.2d 898, 906 (2d Cir. 1982) ("[A]bsent obvious inconsistencies" in the special verdict, a court should presume the jury acted lawfully and should not order a retrial.).

Judge Pooler's argument suffers from a further flaw. Even if we viewed the answer to Question B1 as expressing the jury's desire to award damages, that would not necessarily contradict and invalidate its finding of the facts supporting Lebonia's immunity, which each juror reconfirmed when polled. The case would still be different from *Finnegan,* where one crucial jury finding was unreconcilably contradicted by another. At most, by awarding damages in circumstances where the court had explained to the jury that Defendant could not be liable, the jury would have raised a possibility that it did not really find the facts underlying immunity as stated in its answer to question A2(a). It would be at least equally likely, however, that the jury found the facts which gave rise to qualified immunity, as it said it did, but nonetheless out of sympathy hoped to make an award that would reimburse Plaintiff's expenses. The jury's desire to award damages in spite of its finding of Defendant's entitlement to immunity would be contrary to law. The district court could properly strike it and enter judgment on the basis of the

12

factual findings which entitled Defendant to immunity.

The Rules expressly provide that when a general verdict is inconsistent with the jury's findings in the special verdict, among the options available to the court is to approve an appropriate judgment according to the facts established by the special verdict answers, notwithstanding the general verdict. Fed. R. Civ. P. 49(b)(3)(A). Where the circumstances raise no more than a speculative possibility of incompatible inconsistency in the jury's verdict and the trial judge has concluded that the explicit finding of facts establishing entitlement to qualified immunity should be credited, the judge surely acts within the permissible scope of discretion in sustaining the jury's finding and entering judgment on it, rather than scrapping the results of the trial and ordering that the case be retried. If the jury's award of damages may represent a desire on the jury's part to make an award of damages that was not justified by the law or the court's instructions, there is no impropriety or abuse of discretion in the district court's striking of the illegal award and entering judgment in favor of the defendant based on the jury's finding of entitlement to qualified immunity. *See Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963) (Courts should harmonize a jury's special verdict answers "if it is possible under a fair reading of them."); *also Turley v. Police Dep't of City of N.Y.*, 167 F.3d 757, 760-61 (2d Cir. 1999) (When faced with inconsistent special verdicts, a court generally should try to interpret the verdict in a manner which allows reconciliation and upholding of the jury's verdict, if possible.).

An instructive, if improbable, analogy might be found if a district court judge, at a bench trial, found that the defendant was not liable to the plaintiff but nonetheless awarded damages based on the judge's perception that the defendant had behaved nastily (although not illegally) toward the plaintiff. On appeal, in all likelihood, we would not order a new trial by reason of the

13

inconsistency, but would merely strike the illegal damages award and direct the entry of judgment in favor of the defendant. The answer should not be different where a jury unanimously makes factual findings which require judgment in the defendant's favor but nonetheless insists on making a legally baseless award of damages to the plaintiff.

Judge Pooler asserts that this analogy to a trial judge is not apt because, unlike the case of the judge who makes fact findings but renders a verdict that is not compatible with the facts he has found, the jury here found no facts, but rather compromised the conflicting views of different jurors. Judge Pooler's insistence that the jurors, contrary to their answers on the verdict form and to the court's poll, were really in disagreement on Labonia's entitlement to immunity is based on nothing more than speculation. It is indeed *possible* that the verdict represented a compromise between jurors who believed Labonia had proved entitlement to immunity and others who believed he had not. In fact, that possibility exists in virtually every case in which a plaintiff receives a jury award of less than the plaintiff was seeking. One never knows for sure what has happened in the secrecy of jury deliberations. Judge Pooler's speculation, however, is not the only possible explanation, nor even the most likely explanation for the jurors' answers. We see no reason to consider it more likely than that the jurors were merely following the instructions on the special verdict form, answering each question as instructed; nor is it more likely than that the jury unanimously found Labonia's entitlement to immunity, but nonetheless wanted to give some compensation to the abused plaintiff. While it is indeed possible that certain jurors lied when recording and reporting their finding that Labonia had proved entitlement to immunity, the district judge did not believe this to be the case, and we see no reason to reject his analysis. If new trials were required whenever a possibility exists that jurors with conflicting views had

14

compromised, trial would become a hopeless and ineffectual way to settle disputes.

In support of her assertion that the verdict represented an improper compromise between jurors who disagreed on Labonia's entitlement to immunity, Judge Pooler relies heavily on the fact that the jury sent the judge a note saying, "We were trying to compromise among very rigid positions - wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability." Judge Pooler reads the use of the word "compromise" as necessarily meaning that the compromise in question was between jurors who disagreed whether Labonia was entitled to immunity. While the word "compromise" is often used in the context of resolving disagreements among different persons, that is not its only meaning. A single individual can seek a compromise as among conflicting desires, and so can a unanimous jury, notwithstanding its unanimity on a crucial factual finding. The jury's note neither said, nor suggested, that some jurors wanted to rule for Plaintiff and others for Defendant. Rather, on its face, the note appears to say that the jury (as a whole) was struggling to find the proper compromise between the jury's desire to cover Plaintiff's expenses and to absolve the police officer, while recognizing that, under the law explained by the judge, it could not do both. Judge Pooler's contention that the jury note revealed an illegal compromise between jurors who would award damages to Plaintiff and jurors who would exonerate Defendant is based on mere speculation and does not justify our mandating a retrial. *See Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 184 (2d Cir. 1977) (Even if juror misconduct such as a compromise verdict is a possibility in a given case, a new trial cannot be sustained when "there is an equally reasonable and perhaps even better explanation which involves no jury misconduct.").

In summary, the district court credited the jury's finding of facts that entitle Defendant to

15

immunity and entered judgment on that basis. We see no illogic or abuse of discretion in that action. Based on a pyramid of speculations, Judge Pooler contends the court could not lawfully credit the jury's finding of facts supporting Lebonia's immunity. She speculates that, contrary to the express terms of the jury's findings, these findings really expressed an award. She further speculates that the jury's "award" of damages cannot be understood as a desire to reimburse Plaintiff's expenses notwithstanding Defendant's entitlement to immunity but must be understood as representing findings that contradict the jury's expressly stated finding of the facts giving rise to Labonia's immunity. Finally, Judge Pooler invokes the further speculation that the jurors were never in agreement on Labonia's immunity but improperly compromised their differences. We express no view on whether the district court would have acted within its discretion if it had regarded Judge Pooler's speculations as sufficiently likely to adhere to its initial ruling ordering a new trial. The district court instead credited the jury's findings at face value and entered judgment on that basis. There was no abuse of discretion in that decision. In fact, it was eminently sensible.

## II. Motion for Reconsideration

Plaintiff also argues that the district court erred procedurally and substantively in granting Labonia's motion for reconsideration. We disagree. A motion for reconsideration may be granted for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has noted that this catch-all provision of Rule 60(b) allows courts to vacate judgments whenever necessary to accomplish justice, although such relief should be granted only in extraordinary circumstances. *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988). "A motion seeking such relief is addressed to the sound discretion of the district court with appellate

review limited to determining whether that discretion has been abused." *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986).

Plaintiff first contends that Labonia's motion for reconsideration should have been denied as untimely. A motion for reconsideration under Fed. R. Civ. P. 60(b)(6) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). The district court denied the Defendants' prior post-trial motion for judgment as a matter of law on September 22, 2006 and Defendants timely appealed this ruling. While the appeal was pending, the district court was without jurisdiction of the case. *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001). This court remanded the case to the district court on March 27, 2008. Four days later, on March 31, 2008, Labonia filed his motion under Rule 60(b) for reconsideration. The motion was made within a reasonable time and was therefore timely.

Plaintiff next contends that the district court erred in granting the motion because Labonia did not establish extraordinary circumstances, as required by *Liljeberg*. We disagree. While Defendants' initial appeal was pending in this case, the district court issued an order in which the district court expressed that "[i]n retrospect, it may have been more proper for the Court to simply have accepted the verdict as to the excessive force and qualified immunity claims and to have rejected the damages award, thereby eliminating the inconsistency." This court then remanded the case to the district court and stated, "Nothing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled." *Aczel*, 271 Fed.Appx. at 75. In light of the district court's reconsideration while the appeal was pending, this court's explicit permission to the district court to revisit its earlier ruling, and the very unusual facts of this case, the district court was within its proper range of discretion in

17

considering the circumstances sufficiently extraordinary.

**CONCLUSION**

The judgment of the district court is affirmed.

POOLER, Circuit Judge, dissenting:

I respectfully dissent from the panel's opinion. In this case, the jury's initial verdict was an impermissible compromise between jurors who wanted to find that defendant-appellee Leonard Labonia was entitled to qualified immunity and jurors who wanted to award damages to plaintiff-appellant John Aczel. After the legal inconsistency was explained by the judge, the jury was invited to strike its damage award, if it indeed agreed that Labonia was entitled to qualified immunity. The jury could not reach agreement to do so. Nonetheless, the district court set aside the jury's damages award. Never before have we permitted a district court to reconcile a jury's inconsistent verdict, where the jury was asked to do so itself, but was unable to reach agreement. This result usurps the role of the jury and fails to accord proper deference to Aczel's Seventh Amendment rights. I would vacate the district court's judgment as to Aczel's claims of excessive force and assault and battery against Labonia and remand for a new trial on those counts.

I.      **The Jury's Verdict**

A.      **Inconsistency**

"[T]he proper approach when faced with seemingly inconsistent verdicts is not to credit one finding and vacate the other." Harris v. Niagara Mohawk Power Corp., 252 F.3d 592, 598 (2d Cir. 2001). "[P]roper deference to the parties' Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding." Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir. 2001). In Finnegan v. Fountain, 915 F.2d 817, 820 (2d Cir. 1990), a jury concluded that an officer used excessive force "in good faith" but awarded punitive damages. The award of punitive damages relied on a finding of bad faith. We concluded that the

1

verdict could not be logically reconciled. Id.; see also Brooks v. Brattleboro Mem'l Hosp., 958 F.2d 525, 529 (2d Cir. 1992) (verdict finding defendants liable for negligence in causing pain and suffering but awarding zero in damages irreconcilable).

The majority holds that Finnegan is not controlling because a finding that a plaintiff suffered damages as a result of a defendant's excessive force is not inconsistent with a finding of qualified immunity. Here, the terms of the verdict sheet asked only the amount of damages proximately caused by Labonia's conduct, not whether the jury had found Labonia liable and chosen to grant an award of damages. The problem with the majority's reasoning is that it considers the verdict sheet in a vacuum, without regard for (1) the district court's clear instructions that the question of qualified immunity went to the issue of liability and the jury was not to consider damages "unless and until" it found liability, (2) the jury's inability to reconcile its verdict once the inconsistency was made clear, and (3) the notable absence of the arguments advanced by the majority from the parties' briefs and the district court's opinion.

The jury's verdict must be understood in the context of the verdict sheet's structure of the court's instructions. The verdict sheet was divided into a section for liability and a section for damages. In the liability section, question A2 asked whether Labonia had violated Aczel's Fourth Amendment right to be free from excessive force. The jury marked "yes." The jury was then directed to answer subquestion A2(a) – whether Labonia had proved "a reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest." The jury marked "yes" in response to that question as well. Prior to deliberations, the jury was instructed that the "qualified immunity defense" was a defense "to liability for damages." (emphasis added). The placement of these questions on the verdict sheet and the

2

district court's instructions made clear that both questions pertained to liability.

On the damages section of the verdict sheet, question B1 asked, "if any, of Interrogatories A1-A6 you have answered 'yes,' what amount of compensatory damages has Plaintiff proved were proximately caused by the acts of any Defendant?" In connection with this inquiry, the district court instructed the jury:

> Now in the next part these instructions shall cover the question of damages, if you reach that question. The fact that I charge you as to damages should not be taken as a suggestion that you should reach the question of damages. I do so only in case you decide the question of liability; that is, in favor of the plaintiff. You should not consider the question of damages unless and until you decide the issue of liability in one or more respects in favor of the plaintiff.[1]

The instructions repeatedly referred to the jury's damages determination as an "award" to be rendered by the jury, for purposes of "compensation." Defendants did not object to these instructions, or protest that the verdict form only called for a special verdict. The damages question did not state that a finding of qualified immunity in response to subquestion A2(a) would preclude an award. The jury awarded $12,078.61 in damages, notwithstanding its finding of qualified immunity.

The majority asserts that it is "speculat[ion]" to conclude that "the jury's answer to Question B1 expressed an anomalous award of damages." The majority concludes that the jury's $12,078.61 award represents a simple response to the verdict sheet's request for a factual finding as to the amount of Aczel's damages that were "proximately caused" by Labonia. I would agree,

---

[1] The majority emphasizes the phrase "in one or more respects" as though it somehow implied that the jury could reach the damages question notwithstanding a finding of qualified immunity. The phrase "one or more respects" refers to a finding of liability on one or more counts. The jury was instructed that a finding of liability on any federal claim entailed a finding that the officer was not entitled to qualified immunity.

3

if the verdict sheet was the only evidence in the record. But the majority ignores the court's clear instructions. No "speculation" is required to reach the conclusion that the jury did as instructed. We presume juries follow instructions. See, e.g., United States v. Stewart, 433 F.3d 273, 307 (2d Cir. 2006). Perhaps the majority would have district courts do away with the practice of instructing jurors on the law.

Moreover, no participant in this trial ever advanced the majority's strict interpretation of the text of the verdict sheet. The judge, jury, and parties all agreed that the jury's $12,078.61 damages finding was an "award" of damages inconsistent with a finding of qualified immunity. As the district court acknowledged, the jury's confusion resulted from "the overly simplistic instruction that led to [its] answering Question B.1 [damages]." Indeed, the majority recognizes that "[o]n receipt of the verdict form, the court was apparently surprised to receive an answer stating Plaintiff's damages together with an answer finding qualified immunity that required judgment in favor of Defendant." The defendants also agreed that the district court "inadvertently misle[]d the jury as to their ability to award compensatory damages upon a finding of qualified immunity based upon ambiguity in the verdict form." Neither in the district court, nor on appeal, has Labonia ever advanced the argument made by the majority – that the jury's damages award is consistent with a finding of qualified immunity. As for the jury, it sent a note explaining that by its verdict, it "wanted expenses incurred paid to Mr. Aczel," making clear it intended to award damages.

If there had been any doubt at the time the jury returned the verdict, the fact that the jury was unable to agree to the same verdict after the law was clarified makes the inconsistency of the initial verdict undeniable. The court informed the jury that if Labonia was entitled to qualified

immunity, "that's the end of the case, and there would be no damages to be awarded." Upon receiving the district court's clarification, the jury foreperson responded that she now understood "completely." Without objection from the parties, the district judge sent the jury "back in the jury room," stating, "I have not accepted your verdict as far as A.2. [excessive force] and A.2.a. [qualified immunity] is concerned, nor B.1 [damages] . . . and . . . you should reconsider what you have indicated to me that is inconsistent." He also suggested that the jury could "remove the inconsistency . . . simply by lining out [the damages number] you've put in B.1 . . . ." Having failed to object to the district court's decision to resubmit the case to the jury, defendants waived any argument that the jury's initial verdict was consistent.

After further deliberation, the jury sent a note stating:

We were trying to compromise among very rigid positions – wanted expenses incurred paid to Mr. Aczel <u>and</u> the policeman absolved of liability. Now we believe we can't do both – Is this true?

If we keep going, we might want to change other parts of the verdict already admitted. Is this possible?

The district court again instructed the jury that it could not award damages if it found Labonia entitled to qualified immunity, and refused the jury's request to "change other parts of the verdict already admitted." The jurors returned to continue deliberations, but were ultimately unable to reach any agreement to resolve the verdict's inconsistency.

Thereafter, the district court (1) denied Labonia's motion for judgment as a matter of law, (2) granted Aczel's motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure as to his claim of excessive force, and (3) denied Aczel's motion for a mistrial as moot. While the decision was on appeal, the district judge had a change of heart, and invited

5

Labonia to move for reconsideration of its decision to grant a new trial. Labonia did not then and does not now raise the argument that forms the backbone of the majority opinion – the distinction between a general and a special verdict under Rule 49(a) of the Federal Rules of Civil Procedure. Nor does the district court's opinion granting Labonia's motion for reconsideration refer to that distinction.

Understood in context, the jury's damages award was the bottom line – embodying its ultimate assessment of the case. The Seventh Amendment implications are amplified because the district court reconciled the inconsistent verdict by setting aside the jury's ultimate conclusion. See Ratigan v. N.Y. Cent. R.R. Co., 291 F.2d 548, 557-58 (2d Cir. 1961) (Friendly, J., dissenting) (arguing that there was no reason to strike the jury's answer to the ultimate question in the case, a mixed question of law and fact, on the basis of its response to a factual question, because the result would be one "quite evidently opposed to the result the jury intended.").[2] Thus, I conclude the district court erred in denying Aczel's motion for a new trial.[3]

---

[2] In Ratigan, the majority concluded that the jury's legal conclusion that a defendant's negligence was "passive" did not invalidate its factual finding that the defendant had committed an act of negligence which was "active" as a matter of law. Id. at 555. This logic is inconsistent with our more recent decision in Finnegan v. Fountain, 915 F.2d 817, 820 (2d Cir. 1990), in which we looked to the factual predicates for the jury's decision to award punitive damages award (arguably a legal conclusion) and decided that the verdict could not be logically reconciled. Moreover, as Judge Friendly noted, in Ratigan, the district judge did not give the jury an opportunity to reconcile the verdict itself. Id. at 556. Here, the jury was given the opportunity to reconcile its inconsistent verdict, which it could not do. In none of the cases cited by Labonia on setting aside a damages award was there such a circumstance. See infra n.5.

[3] Aczel also argues that due to the jury's request to reconsider the admitted portions of its verdict, a new trial was required as to all claims and all defendants. I do not agree. The inconsistencies in the jury's verdict pertained to one defendant, Labonia, and only two counts: (1) excessive force and (2) assault and battery. With respect to the assault and battery count, Labonia himself argues that, under the circumstances of this case, the jury's conclusion that Labonia was not liable for assault and battery is inconsistent with an award of damages for

6

## B.     Mistrial

I would also hold that the district court erred in denying Aczel's motion for a mistrial. The district court impermissibly disregarded the jury's inability to reconcile its verdict and reinstated voided findings of fact.  We have held:

> If [an] inconsistency between special verdict answers is noticed prior to the dismissal of the jury, the trial court has the discretion to resubmit the issues to the jury with a request for clarification, whether or not the parties themselves request clarification.  If the court elects not to seek clarification from the jury, or if the inconsistency is not noticed until after the jury has been dismissed, the court must take one of two actions. [1] It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them.  Thus, where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. [2] If there is no way to harmonize the jury's answers, the court must order a new trial.

Auwood v. Harry Brandt Booking Office, Inc., 850 F.2d 884, 891 (2d Cir. 1988) (citations, quotation marks, and alterations omitted).  No authority supports the position that a district court may reconcile a jury's inconsistent verdicts after the inconsistency was explained to the jury, the jury was given the opportunity to reconcile its verdict, and the jury was unable to do so itself.  In such a circumstance, the appropriate course of action is to declare a mistrial.

This problem cannot be avoided by arguing that the district court committed plain error when it resubmitted the case to the jury – rather than entering an appropriate judgment based on the facts established by the special verdict answers under Rule 49(b)(3)(A).  This is not the first time an ambiguous verdict sheet has confused a jury to believe it could award damages notwithstanding a finding of qualified immunity.  In Larson v. Neimi, 9 F.3d 1397, 1401 (9th

---

excess force.  Defs.' Br. at 44-46.  Thus, I would vacate the judgment of the district court as to defendant Labonia as to Count 2, excessive force, and Count 3, assault and battery, and remand this matter for a new trial as to those counts against Labonia.

7

Cir. 1993), the same problem occurred, the case was resubmitted to the jury, and the jury agreed

to change its verdict to find the officer was not entitled to qualified immunity. The Ninth Circuit

held that, given the fact that the parties submitted the proposed verdict sheet and did not object to

resubmission of the case to the jury, any error was invited. Id. Likewise, Labonia did not object

to resubmission of the case to the jury, and therefore cannot (and does not) now argue that the

district court abused its discretion in resubmitting the case to the jury. The Ninth Circuit found

the argument that the district judge "should have first tried to reconcile the answers . . .

unpersuasive." Id. at 1401-02. It concluded that:

> Of course, it makes a good deal of sense to require trial and appellate courts to do
> all they can to reconcile special verdict answers when the only alternative is
> ordering a new trial. However, when the very body that issued the ambiguous or
> inconsistent verdict is still available to clarify its meaning, a request that it do so
> comports with common sense as well as efficiency and fairness. That is not to say
> that a court could never abuse its discretion when it resubmitted a case to the jury
> with an appropriate explanation of the reason. That case might possibly exist, but
> it is not the case before us.

Id. at 1402. Here, the district court acted within its discretion in resubmitting the case to the jury,

in light of the tension, if not manifest inconsistency, in the verdict. The problem is that unlike

the judge in Larson, this district court chose not to abide by the ultimate result – the hung jury.

This was error.

The majority relies heavily on the fact that, before the jury had been informed that it

could not compromise as to qualified immunity and damages, the jury was polled, and all the

jurors stated their agreement on qualified immunity. I conclude that this initial verdict was void

for two reasons. First, before he sent them to deliberate again, the judge informed the jury that

he had not accepted their verdict as to whether Labonia used excessive force, whether Labonia

8

was entitled to qualified immunity, or whether Aczel was entitled to damages. Second, once the law was clarified for the jury, they were unable to confirm their intent to return a verdict in Labonia's favor on qualified immunity by striking out the damages award. Thus, we must presume that, but for their mistake as to the law, the jury would not have been unanimous on the factual finding that Labonia was entitled to qualified immunity in the first place. Ignoring these facts, the majority characterizes the jury's decision to make "no change to its findings on the verdict form," as a decision to "continue[] to report" the same findings that the jury had been instructed were irreconcilable and void. But the jury did not continue to report any agreement. Before the jury was excused, it was not polled again to determine whether each juror still agreed to the prior findings. The jury had reached "an unresolvable impasse."

Insofar as the jury's initial verdicts as to qualified immunity and damages were void, there was nothing for the district court to reconcile, and its decision to do so was reversible error. Cf. Rios v. Empresas Lineas Maritimas Argentinas, 575 F.2d 986, 990 (1st Cir. 1978) ("Since the trial court refused to accept the first verdict, there were not two verdicts here.").

C.      Compromise

Even assuming the district judge had not erroneously reinstated a void verdict, I would conclude that the district court's post hoc attempt to harmonize that verdict was an abuse of discretion, because we must presume the jury's initial verdict was the result of an invalid compromise. "A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages." Mekdeci v. Merrell Nat'l Labs., 711 F.2d 1510, 1513 (11th Cir. 1983) (citing Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1053 (5th Cir. 1972)). Indicia of an improper

9

compromise verdict may include whether the size of the verdict corresponds with the facts adduced at trial, the length of deliberations, the degree to which liability was contested at trial, and the jury's communications with the judge. Mekdeci, 711 F.2d at 1515; see also Atkins v. New York City, 143 F.3d 100, 104 (2d Cir. 1998). Where these indicia go to show that a "jury compromised the issues of liability and damages, therefore rendering them inseparable," a new trial may be required. Mekdeci, 711 F.2d at 1515.

We do not need to look hard at the circumstantial evidence in this case to determine whether a compromise occurred – the jurors sent the district judge a note stating plainly that they "were trying to compromise among very rigid positions – wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability." The note does not specify which jurors subscribed to which "rigid positions." The "compromise" could be explained in one of two ways: (1) some jurors thought Labonia was not entitled to qualified immunity and reached a compromise with those who did not (Aczel's position), (2) the whole jury agreed Labonia was entitled to qualified immunity, but wanted to award damages anyway (Labonia's position). The majority muses that, "[w]hile the word 'compromise' is often used in the context of resolving disagreements among different persons, that is not its only meaning. A single individual can seek a compromise as among conflicting desires, and so can a unanimous jury . . ."

If the jury had meant the word "compromise" in the sense of a theoretical compromise between conflicting ideas, presumably, it would have been able to reconcile its verdict once informed that its theoretical compromise was not permitted by law. The district court assumed the jury's ultimate inability to reach a verdict was a result of the desire of some jurors to evade the court's instructions and award damages out of sympathy, rather than disagreement as to the

10

operative fact question of qualified immunity. The majority agrees that the sympathy verdict explanation is "at least equally likely" as the explanation that the jurors compromised as to the qualified immunity finding, and therefore, the district court "could properly strike" the jury's damages award as "contrary to law."

I do not agree with this condescending characterization of the jury's decision to award damages. We cannot accept an explanation of a jury's verdict that relies on jury misconduct where there is "an equally reasonable and perhaps even better explanation which involves no jury misconduct." Ajax Hardware Mfg. Corp. v. Industrial Plants Corp., 569 F.2d 181, 184 (2d Cir. 1977).[4] The better explanation here is that the jury reached an impermissible compromise verdict due not to misconduct, but to confusion about the law resulting from the district court's instructions. After the confusion was cleared up, the jury hung.

The majority notes that an "instructive" analogy might be if a district court "at a bench trial, found that the defendant was not liable to the plaintiff but nonetheless awarded damages based on the judge's perception that the defendant had behaved nastily (although not illegally) toward the plaintiff." In that situation, I agree that "in all likelihood, we would not order a new trial by reason of the inconsistency, but would merely strike the illegal damages award and direct the entry of judgment in favor of the defendant." The district judge in the example is a single decisionmaker. The error would be a simple error of law. A unanimous jury verdict, by contrast, must be reached through the agreement of multiple jurors who must be instructed on the law by

_____

[4] In Ajax, both parties agreed that if the plaintiff was entitled to damages at all, it was entitled to a liquidated sum, and the jury found liability but awarded damages of less than half the amount of the liquidated damages. 569 F.2d at 183-84. We held that "the reasonable possibility of a compromise verdict warranted a new trial on all issues." Id. at 185.

11

the district court. This situation carries the risk of impermissible compromises as to fact questions based on misleading instructions as to the law – exactly what occurred here.[5]

I do not base my dissent on a "pyramid of speculations" about what transpired in the jury room. Rather, my conclusions follow from the well-established rules that we presume juries follow instructions and do not engage in misconduct. Nor does my approach require a new trial whenever "a possibility exists that jurors with conflicting views had compromised." Rather, I would hold that where (1) the court finds a jury's verdict inconsistent, (2) the court resubmits the case to the jury to reconcile the inconsistent verdict, (3) the jury informs the court that its initial verdict was a "compromise[]" based on the court's confusing instructions, and (4) the jury is unable to reconcile the verdict, then the court must order a new trial. Parties wishing to avoid "costly and wasteful retrial[s]" are well advised to object to misleading jury instructions and special verdict sheets. To save costs, it seems the majority would assume the worst of this jury and disrespect its ultimate inability to reach a decision in this case. I cannot agree with this result.

---

[5] The cases Labonia cites from other circuits on setting aside an illegal damages award all involve juries that returned verdicts that were not in compliance with the court's unambiguous instructions, without a misleading verdict sheet like the one in this case, which made it seem that a compromise was permissible, and where no clarification was requested from the jury prior to discharge. See Floyd v. Laws, 929 F.2d 1390, 1398 (9th Cir. 1991) ("'[I]f the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions.'" (quoting White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987) (emphasis omitted)); Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 10-11 (1st Cir. 1991) ("All of the alleged inconsistencies in the special verdicts stem from the jury's failure to comply with the written instructions on the special verdict form and with the companion explanations given in the charge to the jury."); cf. Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1058 (9th Cir. 2003) (concluding that "resubmitting an inconsistent verdict" is preferable where the jury has not been discharged, although "[a]n entirely different situation is present where the jury has been dismissed. There, dismissal of surplusage . . . makes sense.").

## II.     Rule 60(b)

I also disagree with the majority's conclusion that Labonia's motion for reconsideration was timely under Rule 60(b) of the Federal Rules of Civil Procedure.  That motion was not filed until March 31, 2008, eighteen months after the district court's original ruling on the motion for judgment as a matter of law on September 22, 2006.  A motion for reconsideration brought under Rule 60(b)(1), which provides for relief from a judgment based on "mistake, inadvertence, surprise or excusable neglect," must be made "no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).  Labonia's motion for reconsideration did not state which subsection of Rule 60(b) it was brought under, but the district court based its decision on the catch-all provision of Rule 60(b)(6), which can be used "to accomplish justice," and does not trigger the one-year limitation.  See Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 190 n.8 (2d Cir. 2006).

Rule 60(b)(6) grants "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."  Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 863 (1988) (emphasis added); see also Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986) ("As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect.").  In this case, the district court invited the Rule 60(b) motion upon realization of its own purported mistake as to whether the inconsistency in the jury's verdict could have been eliminated.  "Mistake" is a ground under Rule 60(b)(1).  Thus, despite the

13

district court's treatment of the motion as one brought in the face of extraordinary circumstances, the one-year limitation must apply, and Labonia's motion was untimely.

The district court reasoned that Labonia's motion was not untimely because its "September 22nd Ruling was not final when entered because it was appealed. Finality came with the decision of the Court of Appeals, within four days of which Defendant Labonia filed his present motion." This is incorrect. The pendency of an appeal does not toll the time for filing a Rule 60(b) motion. King v. First Am. Investigations, Inc., 287 F.3d 91, 94 (2d Cir. 2002) ("King argues that an appeal of the judgment tolls the one year period for filing a Rule 60(b) motion . . . . The rule is to the contrary."). "Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court." Stone v. I.N.S., 514 U.S. 386, 400 (1995); see also Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001) (holding that a district court has jurisdiction to deny Rule 60(b) motions during the pendency of an appeal or to indicate intent to grant a Rule 60(b) motion upon remand); Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (per curiam) (same).

This Court's summary order, which denied defendants' appeal of the district court's initial grant of a new trial, provided that "[n]othing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled." Aczel v. Labonia, 271 F. App'x 73 (2d Cir. 2008). The issue of whether a motion for reconsideration would be timely under Rule 60(b) was not before this Court at that time. Our order did not reach any holding on the question.[6]

---

[6] Nor did we "hint[]" as to how this appeal would be resolved. We are not an oracle that offers vague prophecies to litigants and district courts through oblique remarks in summary orders.

14

To preserve his right to Rule 60(b) relief, Labonia should have filed such a motion.  The district court's decision to allow Labonia's late motion was based on an error of law, and therefore, I would conclude that it is an abuse of discretion.

I must therefore respectfully dissent.